[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 6, 2004
THOMAS K. KAHN
CLERK

No. 03-15078

D. C. Docket No. 03-00103-CV-ORL-22-KRS

MULTI-FINANCIAL SECURITIES, CORP.,
(f.n.a. IFG Network Securities, Inc.)

Plaintiff-Appellant,

versus

RUA L. KING,

Defendant-Appellee.

———————————————

Appeal from the United States District Court
for the Middle District of Florida

———————————————

**(October 6, 2004)**

Before BLACK and MARCUS, Circuit Judges, and SMITH[*], District Judge.

SMITH, District Judge:

---

[*] Honorable Fern M. Smith, United States District Judge for the Northern District of California, sitting by designation.

IFG Network Securities, Inc. ("IFG") appeals the district court's September 3, 2003, order compelling arbitration of its dispute with Rex King, now deceased, and Rua King ("King"). On appeal, IFG argues that the district court erred by finding King entitled to arbitration under the National Association of Securities Dealers ("NASD") Code of Arbitration Procedure ("Code") and by refusing to conduct an evidentiary hearing to resolve alleged fact issues. We hold, generally, that the Code is a written agreement binding IFG to arbitrate and, specifically, that the instant dispute is between a member (IFG) and a customer (King) and arises in connection with that member's business, thereby satisfying the Code's enumerated requirements.[1] We, consequently, affirm the district court's order compelling arbitration.

## I. BACKGROUND

At the time IFG filed its complaint, it was a member of the NASD. Following the advice of Anthony Micciche ("Micciche"), a registered representative of IFG, King and her late husband entered into a trust agreement with Intrados, S.A. ("Intrados"), a Panamanian company. On May 2, 1999, King tendered two checks totaling $45,800.00 to Intrados. Intrados, in turn, invested that money in Evergreen

---

[1] Although it should go without saying, we point out that the validity of King's underlying claim is irrelevant to the arbitration issues on appeal. We hereby determine only whether the district court correctly compelled IFG to defend King's claims in the arbitral forum, not whether we deem those claims meritorious. *See United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 567-68, 80 S. Ct. 1343, 1346, 4 L. Ed. 2d 1403 (1960).

2

Securities, Ltd. ("Evergreen"). Evergreen now is bankrupt and King has lost her entire investment. In connection with his association with Evergreen, Micciche pled guilty to the crime of selling unregistered securities.

According to King, she relied, at least in part, on Micciche's affiliation with IFG in making the investments at issue. In support of that reliance, King submitted to the district court a copy of an IFG business card which Micciche allegedly provided her in the course of their business dealings. On its face, the business card indicates that Micciche is affiliated with IFG. Micciche countered: "I did not provide [King] with a business card or correspond with [King] on letterhead referring to IFG. . . . I did not provide [King] with any documents referring to IFG . . . or indicating that IFG . . . was involved with [her] offshore trust, its trustee . . . or the Evergreen Security Ltd. investment the trustee made in their trust." Micciche never reported his activities involving King, Intrados, or Evergreen to IFG, IFG did not approve of the sale of Evergreen by its representatives, IFG does not have any record of the purchase of this investment by or for King, King never opened an account with IFG, King does not have any written contract with IFG, and IFG did not receive or disburse funds for this transaction.

On September 4, 2002, King initiated an arbitration proceeding against IFG, claiming that it violated federal and state securities laws, breached a contract,

engaged in fraud, negligence, and gross negligence, and breached a fiduciary duty. King's substantive claim, in essence, is that IFG failed to supervise Micciche, contrary to its obligations, resulting in her losses through the failed Evergreen investment. Although King did not have a contract with IFG, she demanded arbitration under Rules 10101(c) and 10301(a) of the Code. In response, on January 27, 2003, IFG filed this action against King demanding a declaratory judgment that arbitrability is an issue for judicial determination, that the parties have no valid agreement to arbitrate, that Micciche had no authority to act on IFG's behalf with respect to Evergreen, and that "IFG [] did not violate the federal securities laws." IFG's complaint also seeks an injunction against the then-pending arbitration proceedings. King, in response, filed a motion to compel arbitration under the FAA.

A magistrate judge recommended that the district court deny both IFG's injunction request and King's motion to compel arbitration because "there is disputed evidence on the question of whether Micciche told [King] that he was affiliated with IFG, or gave her other indicia of his affiliation with IFG. . . ." Both parties objected. On September 3, 2003, the district court refused to hold an evidentiary hearing or trial and compelled arbitration, holding that "a customer's direct dealings with an associated person of a[n] NASD member are sufficient to compel a[n] NASD member into arbitration" and that King's "claim has a 'sufficient nexus' to IFG['s] [] business

activities so as to entitle [King] to arbitration in conformance with the NASD Code of Arbitration Procedure." The arbitration panel held a hearing and found in favor of King.

IFG appealed to this Court the district court's September 3, 2003 order compelling arbitration.

## II. JURISDICTION

IFG's appeal is timely, this Court has appellate jurisdiction, 28 U.S.C. § 1291, and the federal courts have subject matter jurisdiction. 28 U.S.C. § 1331; *see also Household Bank v. JFS Group*, 320 F.3d 1249, 1259 (11th Cir. 2003) ("[A] federal district court has subject-matter jurisdiction over a declaratory judgment action if, as here, a plaintiff's well-pleaded complaint alleges facts demonstrating the defendant could file a coercive action arising under federal law.").

## III. STANDARD OF REVIEW

This Court reviews *de novo* questions of law, such as a district court's interpretation of an agreement to arbitrate (and whether it binds the parties to arbitrate), but accepts the district court's findings of fact that are not clearly erroneous. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 947-948, 115 S. Ct. 1920, 1926, 131 L. Ed. 2d 985 (1995).

## IV. ANALYSIS

The Federal Arbitration Act, preliminarily, only applies if the parties agreed "to arbitrate under a written agreement for arbitration." 9 U.S.C. §§ 2, 4. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. This axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648-49, 106 S. Ct. 1415, 1418, 89 L. Ed. 2d 648 (1986) (citations and quotation marks omitted). Although there is no direct written agreement to arbitrate between IFG and King, the Code serves as a sufficient written agreement to arbitrate, binding its members to arbitrate a variety of claims with third-party claimants. *See Kidder, Peabody & Co. v. Zinsmeyer Trusts P'ship*, 41 F.3d 861, 863-64 (2d Cir. 1994).

To determine whether IFG's written agreement to arbitrate governs its dispute with King, the Court must interpret the Code as it would a contract under the applicable state law, *Perry v. Thomas*, 482 U.S. 483, 492 n.9, 107 S. Ct. 2520, 2527 n.9, 96 L. Ed. 2d 426 (1987), giving effect (as it does when interpreting any contract) to the parties' intent expressed by the ordinary meaning of the language they used. *Beans v. Chohonis*, 740 So.2d 65, 67 (Fla. Dist. Ct. App. 1999); *Interfirst Fed. Sav. Bank v. Burke*, 672 So.2d 90, 92 (Fla. Dist. Ct. App. 1996). But, unlike other

contracts, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765 (1983).

Rule 10101(c) provides:

> This Code of Arbitration Procedure is prescribed and adopted pursuant to Article VII, Section 1(a)(iv) of the By-Laws of the Association for the arbitration of any dispute, claim, or controversy arising out of or in connection with the business of any member of the Association . . . between or among members or associated persons and public customers, or others. . . .

NASD Code of Arbitration Procedure Rule 10101(c). And, Rule 10301(a) provides:

> Any dispute, claim, or controversy eligible for submission under the Rule 10100 Series between a customer and a member and/or associated person arising in connection with the business of such member or in connection with the activities of such associated persons shall be arbitrated under this Code, as provided by any duly executed and enforceable written agreement or upon the demand of the customer. . . .

NASD Code of Arbitration Procedure Rule 10301(a). To compel arbitration, therefore, an investor must show that his or her claim: involves a dispute between a member and a customer or an associated person of the member and a customer; and, arises in connection with the business activities of the member or in connection with the activities of the associated person.

*A. Customer Disputes*

7

King's dispute with IFG is one between a customer and a member. Rule 10101(c) only applies to "disputes . . . between or among members or associated persons and public customers, or others" and Rule 10301(a) only applies to "disputes . . . between a customer and a member and/or associated person." Preliminarily, whether King is an IFG customer, as defined by the Code, is a legal question of contract interpretation for the Court, *see Aetna Cas. & Sur. Co. v. Warren Bros. Co., Div. of Ashland Oil, Inc.*, 355 So.2d 785, 787 (Fla. 1978), and, under the circumstance at bar, the Court does not require an evidentiary hearing because the underlying factual circumstances are undisputed (the parties agree that King was a customer of Micciche and that Micciche was a person associated with IFG). The instant matter is distinguishable from *Bensadoun v. Jobe-Riat*, 316 F.3d 171 (2d Cir. 2003), where the Second Circuit found that whether certain investors actually were customers at all presented a triable issue of material fact. *Id*. at 177-78. Unlike *Bensadoun*, there is no proffer of facts to contradict King's allegations that she dealt directly with Micciche, whom IFG concedes was its representative; rather, the different question posed to this Court is whether King was a "customer," as that term is used in Rules 10101(c) and 10301(a), solely because she is a customer of a person associated with IFG.

8

We conclude that King is a "customer," as that term is defined and used by the NASD.[2] The NASD generally defines the term "customer" as anyone who is not a broker or a dealer. NASD Rule 0120(g). Although it concedes that King was Micciche's "customer," as that term is used in the Code, IFG argues that King was not *its* customer. Rules 10101(c) and 10301(a), however, unambiguously provide that the King is a customer as long as she is not a broker or dealer; nothing in the Code directs otherwise or requires more.[3] Enforcing the limitation IFG seeks would be tantamount to reading language into the Code that is conspicuously absent. Other inapplicable NASD rules do make a distinction between customers generally and customers of the member. The NASD rule pertaining to disclosure of financial condition to customers, for example, defines "customer" as "any person who, in the regular course of such member's business, has cash or securities in the possession of such member." NASD Rule 2270(b). The NASD rule regarding margin requirements similarly provides that "customer" means

> any person for whom securities are purchased or sold or to whom securities are purchased or sold whether on a regular way, when issued,

---

[2] There is no dispute that, at all relevant times, IFG was a "member" and Micciche was an "associated person," as those terms are used in Rules 10101(c) and 10301(a).

[3] The Court will not consider the extrinsic evidence presented by IFG regarding the purported intent of the NASD because the rules at issue are clear and unambiguous. *See Bombardier Capital Inc. v. Progressive Mktg. Group, Inc.*, 801 So.2d 131, 134 (Fla. Dist. Ct. App. 2001).

delayed or future delivery basis. It will also include any person for whom securities are held or carried and to or for whom a member organization extends, arranges or maintains any credit. NASD Rule 2520(a)(3).

Rules 2270(b) and 2520(a)(3) show that the NASD could limit the term "customer" specifically to those with whom the member has a direct relationship. Its clear and unambiguous choice to leave the term as defined generally immediately leads to the conclusion that King satisfies the "customer" requirement because she is not a broker or a dealer, even though she may not have been a direct customer of IFG.

Our interpretation of the Code's unambiguous language finds support in almost every other decision on this issue. In *John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48 (2d Cir. 2001), for example, the Second Circuit held that investors could compel arbitration against a member notwithstanding the lack of a direct transactional relationship. *See id*. at 58-60. There, the court held that the plain language of Rule 10301(a) supports the view that the term "customer" refers to either a member's or an associated person's customer, affording customers of an associated person a right to compel arbitration against a member. *Id*. Numerous other courts have interpreted the Code similarly. *See, e.g., California Fina Group, Inc. v. Herrin*, 379 F. 3d 311, 318 (5th Cir. 2004) ("'[C]ustomer' as used in Rule 10301(a) is plainly broad enough to include persons who purchased securities from a registered representative of an

10

NASD-member firm, a.k.a. an 'associated person,' and who are not themselves brokers or dealers."); *Vestax Secs. Corp. v. McWood*, 280 F.3d 1078, 1082 (6th Cir. 2002) (rejecting the argument that the Code requires the defendant-investors be direct customers of the NASD member firm in order to compel arbitration against the member)*; Daugherty v. Washington Square Secs., Inc.*, 271 F. Supp. 2d 681, 690 (W.D. Pa. 2003) ("The majority of federal courts faced with interpreting NASD Rule 10301(a) concluded that NASD members must arbitrate disputes raised by customers of their associated persons."); *Washington Square Secs., Inc. v. Aune*, 253 F. Supp. 2d 839, 841 n.1 (W.D.N.C. 2003) ("The majority view is stated in the *John Hancock* opinion . . . holding that customers of the NASD member firm's representative/associated person can require the NASD member to submit to arbitration."); *BMA Fin. Servs., Inc. v. Guin*, 164 F. Supp. 2d 813, 820 (W.D. La. 2001) ("Rule 10301(a) does not require the Defendant-Investors to be direct customers of [the member]. Instead, they fit within the confines of the Rule--and therefore may require [the member] to arbitrate--even if they are only customers of [the member's] 'associated person' and not [the member]."); *Fin. Network Inv. Corp. v. Becker*, 762 N.Y.S.2d 25, 27 (N.Y. App. Div. 2003) ("NASD's definition of 'customer' is broad, excluding only a broker or dealer, and plainly including customers of an associated person as well as of the member itself.").

The case law is not unanimous. At least one federal court has taken an opposite view. In *Investors Capital Corp. v. Brown*, 145 F. Supp. 2d 1302 (M.D. Fla. 2001), the Middle District of Florida, from which the instant matter arises, held that "being a customer of an associated person is not, in itself, a sufficient basis for compelling arbitration with a member." *Id*. at 1307. That court required some indicia of a direct customer relationship between the NASD member firm and the investor. *Id*. at 1308 ("[I]n joining the NASD, [the member] agreed to arbitrate disputes with its customers, rather than the customers of every person associated with [the member]. The opposite construction of Rule 10301(a), the Court concludes, would do significant injustice to the reasonable expectations of NASD members" (quotation marks and citations omitted)). Another case in that district followed the *Investors Capital* holding. *Mony Secs. Corp. v. Vasquez*, 238 F. Supp. 2d 1304, 1306-08 (M.D. Fla. 2002). The reasoning of these decisions is not persuasive, however, because they read a limitation into the Code that is absent from its language. The NASD, moreover, has been on notice at least since 2001 -- when the Second Circuit issued *John Hancock* -- of the broad meaning the courts would attribute to the language used. The NASD could have prevented any purported "significant injustice" merely by including simple limiting language, as it did with Rules 2270(b) and 2520(a)(3). The NASD has not done so, and this Court only can conclude that the *John Hancock*

12

interpretation is consistent with the NASD members' reasonable expectations. Finally, the Code's second requirement, that the dispute arise in connection with the business of the member, provides for the general connection between the customer's dispute and the member's conduct that these decisions impose upon the customer-member requirement.

Even if the Code were not written so broadly and a member could only be compelled into arbitration by its own customers, King still could have compelled IFG into arbitration. When an investor deals with a member's agent or representative, the investor deals with the member. *Vestax*, 280 F.3d at 1081; *Oppenheimer & Co. Inc. v. Neidhardt*, 56 F.3d 352 (2d Cir. 1995); *see also Washington Square Secs. Inc. v. Sowers*, 218 F. Supp. 2d 1108, 1116 (D. Minn. 2002) ("Federal case law plainly states that when the investor deals with an agent or representative [of a member], the investor deals with the member, and on that basis the investor is entitled to have resolved in arbitration any dispute that arises out of that relationship" (quotation marks and citation omitted)); *Summit Brokerage Servs., Inc. v. Cooksley*, No. CA 02-11137 AO, 2002 WL 31478190 (Fla. Cir. Ct. Nov. 6, 2002) ("[B]y dealing with [the firm's] registered representative, [the investor] became a customer of that firm for purposes of NASD arbitration obligations."). The parties agree that King dealt with Micciche, so King, in turn, dealt with IFG. The Court, therefore, holds that King

13

has satisfied the first requirement of Rules 10101(c) and 10301(a) by demonstrating that she is a customer and that IFG is a member.

*B. Member's Business*

Rule 10101(c) only applies to disputes "arising out of or in connection with the business of any member" and 10301(a) only applies to disputes "arising in connection with the business of such member." Unlike the Code's broad "member" and "customer" requirements, the "in connection with" element focuses Rules 10101(c) and 10301(a) on particular types of disputes. Otherwise stated, in the universe of member-customer disputes, only a portion will arise in connection with the member's business and only those satisfy the Code's arbitration provisions. King's cause of action, for example, arises from the actions of Micciche in giving advice regarding investments at a time when he was a person associated with IFG, a brokerage firm in the business of providing investment advice through its representatives. King's primary claim, specifically, is that IFG negligently supervised Micciche, resulting in the troubled Evergreen investment. The NASD requires that its members supervise the activities of their associated persons, as part of their business. NASD Code of Conduct Rule 3010. We conclude that King's claim of negligent supervision satisfies the Code's second arbitration condition. *See Vestax*, 280 F.3d at 1082 (holding that a dispute that arises from a member's lack of supervision over its associated persons

14

arises "in connection with its business"); *John Hancock*, 254 F.3d at 58-59 (same); *MONY Secs. Corp. v. Bornstein*, 250 F. Supp. 2d 1352, 1357 (M.D. Fla. 2003) (same); *Hornor, Townsend & Kent, Inc. v. Hamilton*, 218 F. Supp. 2d 1369, 1384 (N.D. Ga. 2002) (same); *First Montauk Secs. Corp. v. Four Mile Ranch Dev. Co., Inc.*, 65 F. Supp. 2d 1371, 1379 (S.D. Fla. 1999) (same); *see also* 1 Thomas H. Oehmke, Commercial Arbitration § 28:14 (2003) ("A dispute that arises from a securities brokerage firm's lack of supervision over its brokers arises in connection with its business (for purposes of NASD rules compelling arbitration of disputes).").

## V.  CONCLUSION

For the reasons stated above, the Court concludes that IFG is a "member," that Micciche is an "associate person," and that King is a "customer," as those terms are used in the Code, and that King's dispute arises in connection with IFG's business. Rules 10101(c) and 10301(a) of the Code, a valid written agreement to arbitration, therefore, provide that King may demand arbitration for its dispute with IFG.

Accordingly, we affirm.

**AFFIRMED.**