[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 18, 2004
THOMAS K. KAHN
CLERK

_____

No. 03-11646

_____

D.C. Docket No. 02-00009 CV-FTM-29-DNF

MONY SECURITIES CORP.,

Plaintiffs-Appellant,

versus

LELAND BORNSTEIN,
JUDITH A. BORNSTEIN,

Defendants-Appellants.

_____

Appeal from the United States District Court
Middle District of Florida

_____

**(November 18, 2004)**

Before TJOFLAT and MARCUS, Circuit Judges, and MUSGRAVE[*], Judge.

---

[*] Honorable R. Kenton Musgrave, Judge, United States Court of International Trade, sitting by designation.

TJOFLAT, Circuit Judge:

This case concerns Rules 10101 and 10301 of the National Association of Securities Dealers (NASD) Code of Arbitration Procedure. The district court granted summary judgment, concluding that these Rules coalesce to create two requirements, and that there was no question of fact on either requirement. We agree, and thus affirm.

This opinion proceeds in four parts. Part I lays out the factual and procedural background. Part II states and applies the applicable law, concluding that the district court did not err because the law is settled and the material facts are undisputed. Part III addresses counterarguments. Part IV concludes.

I.

The events began in November 1997. Leland and Judith Bornstein contacted Lawrence Keller in response to an advertisement that Keller placed in local newspapers. Keller worked in the financial-planning business, and he had affiliations with several business. One such business was MONY Securities Corp., a broker-dealer who sold securities. MONY is a member of the NASD.

Keller came to the Bornsteins' home and described several investment opportunities. The Bornsteins selected viatical settlement contracts, which are contracts in which an insured sells her life insurance policy to an investor for a

2

payment approximating the discounted present value of the policy. The Bornsteins invested in five viatical contracts through a company unrelated to MONY.

The Bornsteins' investments went bad. Beginning in October 1998 and continuing through June 2001, the Bornsteins received letters from—and sent letters to—the Florida Department of Insurance and the unrelated company that offered the viatical contracts. In June 2001, the Bornsteins complained to MONY. In November 2001, the Bornsteins filed an arbitration claim with the NASD against MONY alleging that MONY breached several duties. We need not discuss these allegations because the Bornsteins' underlying claims are irrelevant to this appeal; rather, we focus solely on the district court's summary judgment decision regarding arbitration.

MONY responded by filing a complaint in the District Court for the Middle District of Florida seeking declaratory and injunctive relief. MONY argued that arbitration was inappropriate. After extensive procedural wrangling, including the reassignment of the case to another judge, the district court granted the Bornsteins' motion for summary judgment. The district court's opinion, Mony Securities Corp. v. Bornstein, 250 F. Supp. 2d 1352, 1353-54 (M.D. Fla. 2003), and the record are replete with facts, some of which are disputed. We need not discuss

these facts because our summary provides those undisputed facts that are necessary for our judgment.

On appeal, MONY argues that the district court erred in entering summary judgement. Specifically, MONY argues the district court erred by, among other things, using the wrong presumption, overlooking disputed issues of material fact, denying MONY its right to a trial under Section 4 of the Federal Arbitration Act, misapplying the law-of-the-case doctrine, and misconstruing the NASD Code.

II.

"This Court reviews de novo questions of law, such as a district court's interpretation of an agreement to arbitrate (and whether it binds the parties to arbitrate) . . . ." Multi-Financial Sec. Corp. v. King, No. 03-15078, 2004 WL 2246220, at *2 (11th Cir. Oct. 6, 2004).

Before we review the district court's decision, we must address two preliminary questions: (1) Is there an agreement to arbitrate? (2) What law governs? These questions are preliminary because they—like the de novo standard of review—frame our review of the district court's decision.

MONY dwells on the first question, arguing that the Bornsteins are not eligible for arbitration because there was never an agreement to arbitrate. This argument fails because the NASD Code itself constitutes the agreement. MONY

4

concedes, as it must, that it is a member of the NASD. And as this court has recently held, even if "there is no direct written agreement to arbitrate . . . , the [NASD] Code serves as a sufficient agreement to arbitrate, binding its members to arbitrate a variety of claims with third-party claimants." King, 2004 WL 2246220, at *2; see also Washington Square Sec. Inc. v. Aune, 385 F.3d 432, 435 (4th Cir. 2004) ("The NASD Code constitutes an 'agreement in writing' under the Federal Arbitration Act, 9 U.S.C. § 2, which binds . . . [an] NASD member, to submit an eligible dispute to arbitration upon a customer's demand.").

The second question—what law governs?—is easy to answer. Both the Supreme Court and the Eleventh Circuit hold that courts "must interpret the [NASD] Code as it would a contract under the applicable state law." King, 2004 WL 2246220, at *2 (citing Perry v. Thomas, 482 U.S. 483, 492 n.9, 107 S. Ct. 2520, 2527 n.9, 96 L. Ed. 2d 426 (1987)). Here, that law is Florida's.

Combining our answers to these preliminary questions, we are left with the following: the parties have a written agreement to arbitrate, and to determine how the agreement applies to the current dispute, we apply Florida law.[1]

---

[1] The parties disagree about whether there is a presumption in favor of arbitration in this case. The Bornsteins argue that the Federal Arbitration Act creates a presumption in favor of arbitration. See generally 9 U.S.C. §§ 1-16 (2000). MONY responds that the presumption does not apply here because it disputes the existence of an agreement to arbitrate. Both parties have some support. For MONY, the Fifth Circuit recently stated that arbitrability under the NASD was a threshold question, and that "the federal policy favoring arbitration does not apply . . .

5

With these questions answered, we now review the district court's decision. If we were dealing with a case of first impression, we would scour the record and our precedent to explicate the applicable laws, balance competing interests, and detail our analysis. But this is not a case of first impression. Instead, most of MONY's arguments were settled by King, which is a legally and factually similar case.

In both King and here, the applicable law centers around Rules 10101 and 10301 of the NASD Code. These rules contain similar—though not identical—language. Rule 10101, entitled "Matters Eligible for Submission," provides "for the arbitration of any dispute, claim, or controversy arising out of or in connection with the business of any member of the Association . . . between or among members or associated persons and public customers, or others." Rule

---

when a court is determining whether an agreement to arbitrate exists." California Fina Group, Inc. v. Herrin, 379 F.3d 311, 316 n.6 (5th Cir. 2004). For the Bornsteins, both the Eleventh and Fourth Circuits hold that because the NASD Code is a written agreement to arbitrate, the only dispute goes to the scope of that agreement and thus the general presumption applies. See King, 2004 WL 2246220, at *2 (clarifying that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration" (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765 (1983)) (internal quotation marks omitted)); Washington Square Sec., 385 F.3d at 435 ("[I]n applying general state law principles of contract interpretation to the interpretation of an arbitration agreement . . ., due regard must be given to the federal policy favoring arbitration." (quoting Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ., 489 U.S. 468, 475-76, 109 S. Ct. 1248, 1254, 103 L. Ed. 2d 488 (1989)) (internal quotation marks omitted)). However, the presumption is not necessary in this case because we can decide the issue as a matter of law without resorting to a presumption. Accordingly, we recognize that King addresses the applicable presumption, but we need not dwell on it in this case.

10301(a), entitled "Required Submission," states:

> Any dispute, claim, or controversy eligible for submission under the Rule 10100 Series between a customer and a member and/or associated person arising in connection with the business of such member or in connection with the activities of such associated persons shall be arbitrated under this Code, as provided by any duly executed and enforceable written agreement or upon the demand of the customer.

The King court interpreted these Rules as providing for a two-part test to compel arbitration: "an investor must show that his or her claim[] involves a dispute between a member and a customer or an associated person of the member and a customer; and, arises in connection with the business activities of the member or in connection with the activities of the associated person." King, 2004 WL 2246220, at *3. King thus focused on the interplay between the two applicable Rules.[2] In other words, instead of parsing the Rules, King interpreted their combined requirements as creating a two-part test.

The King court then applied its two-part test to the facts. To provide

---

[2] MONY argues that Rule 10101 erects an independent barrier because it excludes disputes that arise from the activities of associated persons; that is, it focuses on only the activities of the member. The Eleventh Circuit implicitly rejected this argument in King by focusing on the interplay between Rules 10101 and 10301 to create a two-part test. Moreover, even if MONY's argument was true, the argument fails because, as discussed in Part II, supervision arises from the business of the firm itself. See Washington Square Sec., 385 F.3d at 437 (stating that Rules 10101 and 10301 contain similar requirements, and that "this clause is susceptible to an interpretation which encompasses the Investors' dispute concerning [the firm's] supervision over its associated person"). As a result, MONY's argument about Rule 10101 is not persuasive in this case.

7

context, the material facts follow. Rua King was an investor. Anthony Micciche was a representative of IFG Network Securities, Inc., a member of the NASD. Following Micciche's advice, King invested in a trust agreement with an unrelated company. King, 2004 WL 2246220, at *1. Applying the first part of its two-part test, the King court began by clarifying that "whether King is an IFG customer, as defined by the Code, is a legal question of contract interpretation for the Court." King, 2004 WL 2246220, at *3 (citing Aetna Cas. & Sur. Co. v. Warren Bros. Co., Div. of Ashland Oil, Inc., 355 So. 2d 785, 787 (Fla. 1978)). The court then rejected the argument that Rules 10101(c) and 10301(a) require the investor to be a customer of the member, as opposed to merely being a customer of an associated person. The court rejected this argument based on "the Code's unambiguous language," and based on "support in almost every other decision on this issue." King, 2004 WL 2246220, at *4 (collecting cases). The court thus concluded that King was IFG's customer. Applying the second part of its two-part test, the King court "conclude[d] that King's claim of negligent supervision" arose in connection with IFG's business. Id. at *6.

Here, our conclusion follows King's: the district court did not err because there is no dispute that the Bornsteins were customers of Keller and that Keller was an associated person with MONY. To elaborate, we will briefly discuss each

8

part of the two-part test.

Under the first part, the question of whether the Bornsteins were customers is "a legal question of contract interpretation for the Court." King, 2004 WL 2246220, at \*3. Interpreting the contract in this case (i.e., the NASD Code), we are bound by the plain language of the Code, which defines "customer" to include anyone who is not a broker or a dealer. See NASD Rule 0120(g) ("The term 'customer' shall not include a broker or dealer."); see also John Hancock Life Ins. v. Wilson, 254 F.3d 48, 58 (2d Cir. 2001) ("look[ing] no further than the plain language of Rule 10301"). We are also bound by the clear mandate from King detailed above. See King, 2004 WL 2246220, at \*5 ("The parties agree that King dealt with Micciche, so King, in turn, dealt with IFG. The Court, therefore, holds that King has satisfied the first requirement of Rules 10101(c) and 10301(a) by demonstrating that she is a customer and that IFG is a member."). We thus hold that the Bornsteins are customers under the applicable NASD Rules because it is undisputed that they are customers of Keller, and that Keller was an associated person with MONY.

Under the second part of the two-part test, we must decide whether, under Rules 10101 and 10301, the dispute "arises in connection with the business activities of the member or in connection with the activities of the associated

9

person." King, 2004 WL 2246220, at *3. MONY argues that the events did not arise in connection with its business because the Bornsteins invested in viatical contracts with an unrelated company. MONY also argues that its only connection to the Bornsteins was through an intermediary (i.e., Keller), and that its duty to supervise Keller was not part of its business. Both arguments are wrong. To begin, it is irrelevant that the Bornsteins invested with an unrelated company; what matters is that Keller was also an associated person with MONY. See John Hancock, 254 F.3d at 52, 59 (rejecting the argument "that the Investors' claims do not fall within the scope of the NASD Code because the promissory notes [that the associated person] sold to the Investors were in no way related to [the member firm's] business"). Moreover, the Eleventh Circuit and most other courts hold that supervision of associated persons arises in connection with the member's business. See e.g., King, 2004 WL 2246220, at *6 ("We conclude that King's claim of negligent supervision satisfies the Code's second arbitration condition."); Vestax Sec. Corp. v. McWood, 280 F.3d 1078, 1082 (6th Cir. 2002) ("A dispute that arises from a firm's lack of supervision over its brokers arises in connection with its business." (quoting John Hancock, 254 F.3d at 58-59) (internal quotation marks omitted)); WMA Sec., Inc. v. Ruppert, 80 F. Supp. 2d 786, 790 (S.D. Ohio 1999) ("Plaintiff's business includes the supervision of its large corps of registered

10

representatives. Because Defendants' claims arise in connection with the supervision of two of those representatives, they arise in connection with Plaintiff's business."). Accordingly, the events arose in connection with MONY's business.

In sum, we conclude that the NASD Code requires MONY to arbitrate its dispute with the Bornsteins.

III.

Part II concluded that <u>King</u> largely controls the outcome in this case, but this conclusion does not end our analysis. We must proceed to answer counterarguments. We have considered all of MONY's and the Bornsteins' arguments, and we conclude that they are either without merit or unnecessary to our holding. However, we will specifically address the two counterarguments that were the most promising. One argument is that <u>King</u> was wrongly decided because it overlooked binding Eleventh Circuit precedent. The other is that while <u>King</u> may be good law, it does not apply to our facts.

The first argument focuses on law. MONY argues in its initial brief, and then again in its reply brief, that

> Under the district court's unsupported and overly expansive concept of "arising in connection with the business of a member firm," all broker-dealer firms would be obligated to arbitrate disputes arising

11

out of virtually any activity of an individual who also happens to be affiliated with the broker/dealer without regard to whether the activity relates to the broker/dealer's business as an NASD member firm, and regardless of whether the "claimant" who is seeking to force the broker/dealer to arbitrate ever transacted business with the broker/dealer or had reason to believe he or she was transacting business with the member firm. This application would plainly offend the "reasonable expectations" of member firms in joining the NASD, see, e.g., Wheat, First Securities v. Green, 993 F.2d 814, 820 (11th Cir. 1993) . . . .

In other words, MONY argues that Wheat should control this case. But King did not address Wheat. Therefore, one could argue that King got it wrong because it ran afoul of the prior-panel rule, under which "we are bound by earlier panel holdings . . . unless and until they are overruled en banc or by the Supreme Court." United States v. Smith, 122 F.3d 1355, 1359 (11th Cir. 1997).

This argument fails because King is consistent with Wheat. It is true that Wheat contains some language to support MONY's arguments: "We cannot imagine that any NASD member would have contemplated that its NASD membership alone would require it to arbitrate claims which arose while a claimant was a customer of another member merely because the claimant subsequently became its customer." Wheat, 993 F.2d at 820. But the court decided Wheat on much narrower grounds, holding only "that customer status for purposes of" the NASD is "determined as of the time of the events providing the

12

basis for the allegations of fraud." Id. In other words, Wheat discussed timing for investors who were harmed by the firm's successor in interest. In contrast, in both King and here, the investor was a customer at the time the events took place. Moreover, the Wheat court explicitly ducked the question presented in King and here, writing that while the question whether the NASD is alone sufficient to compel arbitration "presents a tantalizing question, we leave its resolution for another day." Id. To restate, King answered the tantalizing question left by Wheat, and we subscribe to King's answer.

MONY makes the related argument that the district court erred because its decision conflicted with two recent decisions from the Middle District of Florida. See generally MONY Sec. Corp. v. Vasquez, 238 F. Supp. 2d 1304 (M.D. Fla. 2002); Investors Capital Corp. v. Brown, 145 F. Supp. 2d 1302 (M.D. Fla. 2001). MONY suggests that we accept the reasoning from those decisions. We disagree, mainly for the reasons stated in Part II. We also disagree because King already found those cases unpersuasive. King, 2004 WL 2246220, at *4 ("The reasoning of these decisions is not persuasive, however, because they read a limitation into the Code that is absent from its language."); see also John Hancock, 254 F.3d at 60 (rejecting Investors Capital Corp. "as contrary to the plain language of Rule 10301").

13

The second argument focuses on facts. Specifically, MONY argues that there are disputed facts that militate against the district court's decision granting summary judgment for the Bornsteins. MONY cites a cornucopia of facts that it disputes. MONY also argues that the district court's version of the facts rested on an erroneous law-of-the-case ruling. Even if true, these arguments fail to change our decision.

In our review of the district court's decision, we are unconcerned with MONY's cornucopia of disputed facts. Instead, we focus on those facts required to satisfy King's two-part test. So while there many be dozens of disputed facts, the facts that matter in this case are undisputed: the Bornsteins were customers of Keller, who was an associated person of MONY. This undisputed fact pattern is somewhat common, and the overwhelming response is that the case is subject to arbitration. See, e.g., King, 2004 WL 2246220, at *3 (focusing its decision on the following undisputed facts: "the parties agree that [the investor] was a customer of . . . a person associated with IFG"); John Hancock, 254 F.3d at 51 (compelling arbitration, even though "[t]he only possible connection between [the member firm] and the Investors was through their independent relationships with" the associated person); First Montauk Sec. Corp. v. Four Mile Ranch Dev. Co., Inc., 65 F. Supp. 2d 1371, 1379-82 (S.D. Fla. 1999) (granting summary judgment

14

because a firm's lack of supervision arises in connection with its business and because there were sufficient facts to show the investor was a customer). More importantly, this fact pattern falls wholly within the clear language of Rules 10101 and 10301, which focus first on whether the investor is a customer, and second on whether the dispute arose in connection with the business of the member.

IV.

For the reasons stated above, this Court concludes that the district court did not err in entering summary judgment for the Bornsteins.

AFFIRMED.