TRIAD ADVISORS, INC., Plaintiff,

v.

Avinadav SIEV, et al., Defendants.

No. 14 Civ. 5557 (BMC).

United States District Court,
E.D. New York.

Signed Nov. 21, 2014.

Gerard J. Kowalski, Marshall Dennehey Warner Coleman & Goggin, Philadelphia, PA, Richard David Lane, Jr., Marshall, Dennehey, Warner, Coleman & Goggin, New York, NY, for Plaintiff.

Kalju Nekvasil, Stephen Krosschell, Goodman & Nekvasil, P.A., ClearWater, FL, for Defendants.

## MEMORANDUM DECISION AND ORDER

COGAN, District Judge.

Plaintiff, an investment broker-dealer, brings this action for declaratory judgment and to enjoin an arbitration which defendants have commenced pursuant to plaintiff's membership in FINRA. The underlying dispute concerns a real estate investment that was recommended to defendants and facilitated by one of plaintiff's "associated persons," an investment advisor, who then received a finder's fee. Before me are defendants' motion to compel arbitration and plaintiff's motion to stay arbitration. Plaintiff also requests discovery on the issue of arbitrability. Because I find that defendants are entitled to arbitration under FINRA Rule 12200, their motion is granted and plaintiff's motion is denied.

## BACKGROUND

Beginning in June 2008, an investment advisor named Tim Tehan, who was a registered representative of plaintiff Triad Advisers, Inc. ("Triad"), worked with defendant Avinadav Siev ("Siev") to locate a

new real estate investment that would qualify defendants for certain tax advantages following the sale of another holding. Tehan provided defendants with examples of various investment offerings, some of which were being offered directly through Triad. After Tehan concluded that defendants were not interested in any of these, he referred them to the principals of a real estate venture called B & B Alexandria Corporate Park, LLC ("B & B").

Tehan subsequently mentioned various aspects of a private placement offering from B & B in email correspondence and conversations, and discussed the offering with defendants from time to time after making the introduction and referral. On December 9, 2008, defendants invested $2,075,516 into B & B.

B & B had no selling agreement or any other agency relationship with Triad or Tehan; apparently, its practice was simply to pay referral fees to real estate brokers who introduced investors. Defendants have never maintained an account with Triad or with Tehan. Neither Triad nor Tehan is mentioned in any disclosure or agreement relating to the B & B transaction. Nevertheless, once defendants had decided to invest, B & B paid Tehan a finder's ·fee in the amount of $61,920. Triad itself has received no direct compensation in connection with the B & B transaction, and Tehan has received no compensation other than his finder's fee.

After becoming unhappy with their investment in B & B for reasons that are not material, defendants commenced the FINRA arbitration against Triad that gave rise tó this action.

## DISCUSSION

■ Whether a party is entitled to an order of this Court compelling arbitration is determined entirely by the consent of the other party. *In re American Exp. Fin.*

*Advisors Sec. Litig.*, 672 F.3d 113, 127 (2d Cir.2011) (citing the Federal Arbitration Act). FINRA members are considered to have consented to arbitration in accordance with the terms of FINRA Rule 12200. *Id.* at 127–29. There is no dispute that Triad is a FINRA member. My disposition of the instant motions therefore turns on a construction of Rule 12200.

FINRA Rule 12200 has two elements. It subjects a member to arbitration if the "dispute is between a customer and a member or associated person of a member; and ... [t]he dispute arises in connection with the business activities of the member or the associated person." Triad does not dispute—indeed, the Amended Complaint alleges—that Tehan is a registered representative and "associated person" of Triad, and has been at all times relevant to this case. There also appears to be no dispute that, if defendants were Tehan's customers, then the dispute "arises in connection with the business activities" of Tehan.

In *John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48 (2d Cir.2001), the Second Circuit made clear that the customer of a FINRA member's associated person is entitled to arbitrate against the member itself as long as the claim arises out of the associated person's business activities. In *John Hancock*, an independent insurance agent and investment broker who was an associated person of the plaintiff member sold fraudulent promissory notes to the defendant investors with no involvement by the plaintiff. The Court found that "[t]he only possible connection between [the plaintiff] and the [defendant]s was through their independent relationships with" the associated person. *Id.* Nevertheless, the court found that the dispute was arbitrable against the member under Rule 12200's predecessor. This holding has consistently been recognized and reaffirmed. *See, e.g., Citigroup Global Mar-*

*kets Inc. v. Abbar*, 761 F.3d ·268, 274 (2d Cir.2014) ("In short, ·the rule requires a FINRA member to arbitrate disputes with its 'customers,' or the 'customers' of its 'associated persons.'").

■ FINRA has endorsed the same interpretation by explaining, in a procedural rule change proposal to the Securities and Exchange Commission, that it views "selling away" claims as arbitrable against a member. *See Order Approving Proposed Rule Change*, 74 Fed.Reg. 731, 736 n. 37 (Jan. 7, 2009). Thus, even if defendants did not have a "customer" relationship with Triad, it is settled law that such a relationship is not a prerequisite to· arbitrability. The dispute that gave rise to this case is arbitrable ·because defendants were Tehan's customers as that term is meant under Rule 12200.[1]

The definition of "customer" under Rule 12200 and its predecessor rules has never been comprehensively defined by the Second Circuit. *See Abbar*, 761 F.3d at 275 (noting that "the precise boundaries of the FINRA meaning of customer" was "an issue that, until now, this Court has been able to avoid"); *UBS*, 660 F.3d at 649 ("[N]either FINRA nor the courts have offered a precise definition of 'customer.'"). In *Abbar*, the Second Circuit attempted to add clarity by holding that "a 'customer' under FINRA Rule 12200 is one who, while not a broker or dealer, either (1) purchases a good or service from a FINRA member, or (2) has an account with a FINRA member." 761 F.3d at 275.

Defendants do not contend that they held an account with Tehan, and they certainly did not purchase goods from him. The issue in this case is whether defendants "purchased a . . . service" from Tehan in connection with the B & B transaction. Defendants' position is essentially that because Tehan provided them with a service—investment advice and an introduction, and at least some effort to facilitate the B & B transaction—and received "transaction—based selling compensation" from B & B as a result, it follows that defendants were his customers. I agree.

As an initial matter, Triad's reliance on *Abbar* does not assist it. The issue in that case was different. The defendant investors in *Abbar* entered into certain option contracts with Citi UK. Personnel employed by Citi UK and others employed by Citi N.Y. worked on the structuring of the options and oversaw the investment of the fund. When the investors' assets in the fund were depleted, they sought arbitration against Citi NY, which, unlike City UK, was a FINRA member. The Second Circuit's holding was simply that the investors were not customers of Citi N.Y. under Rule 12200 because the Citi N.Y. personnel were in fact acting for Citi UK.

Thus, in *Abbar*, the issue was with which entity the customer relationship existed, not whether any such relationship existed at all. There was no dispute in *Abbar* that the defendant investors were customers of Citi UK—if Citi UK was a FINRA member, the case could have been arbitrated. The issue, rather, was whether the plaintiffs were also customers of Citi NY. I see nothing in *Abbar* to support the conclusion that an individual· who initiates or facilitates a ·transaction in return for a finder's

---

1. Defendants do assert in the alternative that they were Triad's customers, because before deciding to invest in B & B, they "undertook" to purchase other investments offered through Triad. *See UBS Fin. Servs., Inc. v. West Virginia Univ. Hospitals, Inc.*, 660 F.3d 643, 650 (2d Cir.2011) ("The term 'customer' includes at least a non-broker. or non-dealer who purchases, or undertakes to purchase, a good or service from a FINRA member."). Because it is only necessary to find that defendants were Tehan's customers in order to decide the instant motions, I do not reach this question.

fee has not formed a customer relationship within the meaning of Rule 12200.

One conceivable view of Triad's position is that because defendants did not compensate Tehan directly for his services as an investment advisor, but rather B & B did so as a result of defendants' investment, defendants did not "purchase" his services. But the source of the compensation to Triad's associated person does not matter. Tehan provided a service to defendants and he was paid for it. He at least identified an investment appropriate to their specific tax needs, made a referral and introduction to the principals of B & B, and (in Triad's words) "mentioned" and "discussed" the offering on multiple subsequent occasions. Documented communications between Tehan and Siev leave no doubt that Tehan facilitated the transaction and earned his finder's fee.

The limited authority on point is in accord. For example, the Eleventh Circuit has found a dispute arbitrable on substantially similar facts. In *MONY Sec. Corp. v. Bornstein*, 390 F.3d 1340 (11th Cir. 2004), the investment advisor had affiliations with several businesses, including MONY. The investors, at the advisor's recommendation, purchased interests in third-party life insurance contracts from a company unaffiliated with MONY. When the contracts went bad, the investors sought arbitration against MONY. It did not matter to the Court—indeed, it did not even mention—that insurance companies, not the policies' investors, pay commissions out of premiums received from the investors. The Court of Appeals held that the claim was arbitrable solely based on the relationship between the MONY-affiliated investment advisor and the investors. I see no difference between the payment of commissions to an insurance salesman from a

third-party insurer and the finder's fee paid to Tehan here.

Similarly, in *Lehman Bros., Inc. v. Certified Reporting Co.*, 939 F.Supp. 1333, 1340 (N.D.Ill.1996), the court held that "a 'customer' relationship arose with a broker when investors purchased stocks in reliance on advice from that broker, even when the investors' actual purchase of stocks was accomplished through other brokerage firms." The Second Circuit discussed *Lehman Bros.* with approval in *Bensadoun v. Jobe–Riat*, 316 F.3d 171, 177 (2d Cir.2003).

It seems fairly obvious why the source of the investment advisor's compensation is immaterial. It either comes directly from the customer or indirectly through the third party that originated the product, but in either situation, it is the customer that pays it and the investment advisor who receives it. Thus, all that matters is the relationship between the investor and the advisor, and the advisor's status as an associated person.

It also is telling that, albeit in another context, FINRA itself expressly defines "selling compensation" in a way that includes what happened in this case.[2] FINRA Rule 3040, which places certain conditions on the participation of a member's associated persons in transactions for which they may receive "selling compensation," expressly defines that term as including "any compensation paid directly or indirectly from whatever source in connection with or as a result of the purchase or sale of a security, including, though not limited to, commissions; [and] *finder's fees* ..." (emphasis added).

Moreover, in arriving at its definition of "customer" under Rule 12200, the Second Circuit in *Abbar* looked to recent FINRA

---

**2.** It is appropriate to consider the definition of "customer" under other FINRA rules in deciding what that term means under this one. *See Abbar*, 761 F.3d at 276 n. 5.

regulatory guidance concerning its "suitability" rule.[3] *See* 761 F.3d at 276 n. 5. The authority cited by the Second Circuit explains that "the term customer includes a person ... who opens a brokerage account at a broker-dealer or purchases a security for which the broker-dealer receives or will receive, directly or indirectly, compensation even though the security is held at an issuer, the issuer's affiliate or a custodial agent (*e.g.,* 'direct application' business, 'investment program' securities, or private placements)." FINRA Regulatory Notice 12–55 at Q & A 6(a) (Dec. 2012). Although FINRA does not appear to draw the same distinction between a member's customer and an associated person's customer under its suitability rule as it does under Rule 12200, that definition strongly suggests that FINRA considers a finder's fee to give rise to a customer relationship.

Finally, Triad argues that I should not resolve this case without granting discovery on the issue of arbitrability. Specifically, Triad seeks documents and depositions to support its contention "that Defendants consummated the [B & B] transactions directly with B & B," and that there is no mention of Triad, Tehan, or of a finder's fee in any of B & B's offering documents. These facts, Triad argues, would be sufficient to show that defendants were not Tehan's customers under Rule 12200. Defendants, however, do not dispute these facts, so no discovery as to them is needed. Defendants premise their right to arbitration on a legal argument that Tehan's role in the transaction, the material aspects of which are not in dispute, made them his customer. Whether or not Triad's request for discovery is a

"Trojan horse" aimed at accomplishing discovery that would likely not be available in the arbitration, as defendants protest it is, Triad has pointed to no disputed or missing fact that is relevant to my determination of whether Rule 12200 commands arbitration here.

## CONCLUSION

Defendants' motion to compel arbitration is granted. Plaintiff's motion is denied. Judgment will be entered accordingly.

**SO ORDERED.**

---

**3.** FINRA Rule 2111 is a substantive rule governing the conduct of broker-dealers and their registered representatives, who it provides must "have a reasonable basis to believe that a recommended transaction or investment strategy involving a security or securities is suitable for the customer."