# United States Court of Appeals

## For the Eighth Circuit

_____

No. 11-2877

_____

Berthel Fisher & Company Financial Services, Inc.;
Thomas J. Berthel; Ronald O. Brendengen;
Shelley Rae Davenport; Frederick P. Fisher;
Richard M. Murphy; Leslie D. Smith; Daniel P.
Wegmann; and Thomas R. Biesheuvel

*Plaintiffs - Appellees*

v.

Craig Larmon; Geneva OSWX XXII, LLC, a Delaware limited liability
corporation; Earl Holasek; OSWX XXXVI, LLC, a Delaware limited liability
corporation; Geneva FTCX I, LLC,a Delaware limited liability corporation;
Geneva BCCX XVIII, LLC, a Delaware limited liability corporation; Karen Lane;
Geneva OSWX IX, LLC, a Delaware limited liability company; Declaration of
Trust of Karen Lane dated April 24, 1996; Jack Hoopes; Lorna Hoopes; Geneva
OSWX XIX, LLC, a Delaware limited liability company; Patrick Jordan; Geneva
OSWX XXVII, LLC, a Delaware limited liability company; and Patrick J. Jordan
Trust dated April 6, 1990

*Defendants - Appellants*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: June 12, 2012
Filed: October 1, 2012

_____

Before MURPHY, MELLOY, and COLLOTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

This case comes to us on appeal from the district court's[1] grant of the plaintiffs' motion for a preliminary injunction and denial of the defendants' motion to compel arbitration. Because we hold that the district court correctly concluded that the defendants are not the plaintiffs' "customers" under the Financial Industry Regulatory Authority's (FINRA) Code of Arbitration Procedure for Customer Disputes (FINRA Code) we affirm the judgment of the district court.

I.

This case arises out of securities[2] issued by a group of Minnesota limited liability companies (collectively, Geneva) and purchased by defendants-appellants (the Investors) in 2007 and 2008. Plaintiff-appellee Berthel Fisher & Company Financial Services., Inc., et. al (collectively, Berthel), a licensed broker-dealer and member of FINRA, served as managing broker-dealer for the offering. As managing broker-dealer, Berthel assembled a group of FINRA-registered broker-dealers—Selling Group Members, or SGMs—who in turn offered the securities to their own customers, including the Investors.

_____

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

[2]The securities in question were tenancy-in-common interests in real estate located in Minnesota and Texas.

-2-

Although Geneva prepared the private placement memoranda (PPMs) to be provided to prospective purchasers of the securities, Berthel reviewed at least two of the PPMs, suggesting changes that Geneva adopted. Per the agreement between Berthel and the SGMs, Berthel collected investor payments from the SGMs and passed those payments along to Geneva. In addition, the contract between Berthel and Geneva obligated Berthel and the SGMs to determine each investor's eligibility to participate in the offering. Because of this, Berthel maintained a file on each investor that included the investors' names, dates of birth, and contact information.

The securities did not perform as anticipated, leading the Investors to file FINRA arbitration claims against Berthel. The Investors alleged that Berthel performed insufficient due diligence on the offering, leading to critical omissions in the PPMs. After preliminary proceedings before FINRA, Berthel filed suit in the United States District Court for the District of Minnesota, seeking a declaratory judgment that the Investors were not Berthel's "customers" under the FINRA Code and that Berthel was therefore not obligated to arbitrate with the Investors. Further, Berthel moved for a preliminary injunction enjoining the arbitrations, and the Investors cross-moved to compel arbitration.

Relying on Fleet Boston Robertson Stephens, Inc. v. Innovex, Inc., 264 F.3d 770 (8th Cir. 2001), the district court held that the Investors did not qualify as Berthel's customers under the FINRA Code and that the Investors' claims against Berthel were therefore not arbitrable before FINRA. Accordingly, the court granted Berthel's motion to enjoin the pending arbitrations and denied the Investors' cross-motion to compel arbitration.

II.

"We have jurisdiction to review the denial of a motion to compel arbitration as an interlocutory appeal within the scope of 28 U.S.C. § 1292(a)(1)." McNamara v.

Yellow Transp., Inc., 570 F.3d 950, 954 (8th Cir. 2009). "We review de novo the denial of a motion to compel arbitration." CD Partners, LLC v. Grizzle, 424 F.3d 795, 798 (8th Cir. 2005). Likewise, we review de novo the district court's legal conclusions in granting a motion for a preliminary injunction. Sierra Club v. U.S. Army Corps of Eng'rs, 645 F.3d 978, 989 (8th Cir. 2011). "When reviewing the enforcement of an arbitration agreement, we determine only whether there is a valid arbitration agreement and whether the dispute at issue falls within the terms of that agreement." Franke v. Poly-America Med. & Dental Benefits Plan, 555 F.3d 656, 658 (8th Cir. 2009).

"[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985). The Investors do not allege that Berthel explicitly agreed to arbitrate; rather, they allege that they qualify as Berthel's "customers" under the FINRA Code. The FINRA Code, which Berthel has signed as a FINRA member, constitutes an agreement to arbitrate disputes between Berthel and its customers. See In re Am. Exp. Fin. Advisors Secs. Litig., 672 F.3d 113, 128 (2d Cir. 2011) ("Ameriprise does not dispute that, by virtue of its membership in FINRA, it has consented to arbitrate with its customers."); MONY Secs. Corp. v. Bornstein, 390 F.3d 1340, 1342 (11th Cir. 2004) (the predecessor to the FINRA Code "itself constitutes the agreement" to arbitrate.). Rule 12200 of the FINRA Code, which is the successor to National Association of Securities Dealers Code of Arbitration Procedure Rule 10301,[3] states:

---

[3]Herbert J. Sims & Co., Inc. v. Roven, 548 F. Supp. 2d 759, 763 n.2 (N.D. Cal. 2008) ("Rule 12200 of the Code is an amended version of former Rule 10301 that went into effect on April 16, 2007. The cases interpreting and applying Rule 10301 apply with equal force to Rule 12200, as the amendment did not effect any substantive change to the rule.").

-4-

Parties must arbitrate a dispute under the Code if:

- Arbitration under the Code is either:
    (1) Required by a written agreement, or
    (2) Requested by the customer;

- The dispute is between a customer and a member or associated person of a member; and

- The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company.

Here, the Investors have requested arbitration by filing claims with FINRA. Further, the dispute "arises in connection with the business activities" of Berthel because the Investors claim that Berthel failed to conduct adequate due diligence. Accordingly, it is undisputed that the question of arbitrability in this case turns on whether the Investors are Berthel's customers under the FINRA Code.

The FINRA Code defines "customer" in the negative, stating only that "[a] customer shall not include a broker or dealer." FINRA Rule 12100(i). In Fleet Boston, we rejected the argument that one may qualify as a customer merely be being neither a broker nor a dealer. Fleet Boston, 264 F.3d at 772. Instead, we construed "customer" to "refer[] to one involved in a business relationship with [a FINRA] member that is related directly to investment or brokerage services." Id.

It is uncontested that the Investors had no contact with Berthel in the course of investing in the securities at issue. The Investors argue, however, that they qualify as Berthel's customers under Rule 12200 because Berthel

provided "investment or brokerage services" to the investors in three ways. First, Berthel Fisher was responsible for conducting due diligence

-5-

on the TIC interests. Second, Berthel Fisher was obligated to conduct a reasonable-basis suitability analysis on the TIC interests. Third, Berthel Fisher maintained customer files on the investors and was responsible for protecting the investors' privacy.

The provision of these services in this case failed to transform the Investors into Berthel's customers, because Berthel provided those services not to the Investors but instead to the SGMs and Genevea. If the provision of these services formed any customer relationships at all, it formed them between Berthel, Geneva, and the SGMs, not between Berthel and the Investors.

According to the Investors, Vestax Securities Corp. v. McWood, 280 F.3d 1078 (6th Cir. 2002), establishes that a customer relationship is possible "even in the absence of a direct transactional relationship with the firm." Id. at 1081. Citation to Vestax, however, is misplaced. The investors in that case purchased securities from associated persons of the firm. Id. at 1081–82. Arbitration was therefore required because Rule 12200 requires arbitration when "[t]he dispute is between a customer and a member or associated person of a member." Accordingly, that case stands for the unremarkable proposition that customers of associated persons of a firm may compel arbitration with the firm. It does not suggest that an investor who interacts with neither the firm nor its associated persons may nevertheless qualify as a customer of the firm. Neither party argues that the SGMs are associated persons of Berthel; accordingly, Vestax is inapposite.

The Investors argue that Fleet Boston requires only "investment or brokerage related services." But again, the provision of "investment or brokerage related services" is only half of the picture—not only must the FINRA member firm provide those services, but also must it provide those services *to the customer* either directly or through its associated persons. In Fleet Boston, we observed that "[a]lthough other cases interpreting the term 'customer' have in some ways taken a broad view of the term, in all of these cases there existed some brokerage or investment *relationship*

-6-

between the parties." <u>Id.</u> at 772 (emphasis added). Simply put, there is no "relationship" between Berthel and the Investors as required by <u>Fleet Boston</u>. Because Berthel did not provide "investment or brokerage related services" to the Investors, the Investors are not Berthel's customers under FINRA Rule 12200. We affirm the judgment of the district court.

_____