FEIGENBAUM, B.A., Associate Judge.
Mark Jeffrey Grant appeals the trial court’s confirmation of the Financial Industry Regulatory Authority (“FINRA”) arbitration award entered in favor of Denise Jardín Rotolante. We find that Mr. Grant was not obligated to arbitrate Ms. Rotolante’s claims, and therefore, reverse.
Mr. Grant and Ms. Rotolante were friends and neighbors.[1] Mr. Grant is a FINRA[2] Registered Representative per Securities and Exchange Commission Rule 17 C.F.R. § 240.15b7-l. He has more than thirty-eight years’ experience in the securities industry, and is a published author and commentator on investment subjects. When Ms. Rotolante learned about Mr. Grant’s experience in securities, she spoke to him about her finances. Accord *130 ing to Mr. Grant, as a friendly neighbor, he advised her to obtain a job, downsize her home, or both. When she rejected this advice, he suggested, but did not endorse due to high risk, that she could obtain a mortgage on her $1.2 million home, use it to pay off her high interest debt, and invest the remainder. Ms. Roto-lante ultimately chose that route.
Based on Mr. Grant’s recommendations, Ms. Rotolante obtained a home mortgage with Bank of America (“the bank”), invested the proceeds with its investment banking subsidiary, and used one of the bank’s FINRA Registered Representatives as her financial advisor for the new investment account. She deposited hundreds of thousands of dollars into that investment account, paid fees and commissions to the bank, and engaged in many securities transactions with the bank. The bank provided all of Ms. Rotolante’s account records and statements. Ms. Rotolante never opened an account with Mr. Grant, deposited any money or securities with Mr. Grant, purchased or sold any securities from or through Mr. Grant, or paid Mr. Grant any compensation. Further, the bank never paid Mr. Grant any commission or referral fee. Still, in the following years, Mr. Grant reviewed Ms. Rotolante’s investment portfolios, attended various meetings with Ms. Rotolante and the bank’s financial advisor, and repeatedly gave her financial recommendations regarding her investment portfolio, which, at times, conflicted with the financial advis- or’s advice. In 2008, Ms. Rotolante suffered losses related to her investments, which included preferred shares of Fannie Mae, Freddie Mac, and Lehman Brothers.
Thereafter, Ms. Rotolante commenced a FINRA arbitration against Mr. Grant and others related to her failed investments. A three-member FINRA arbitration panel heard the parties’ evidence and argument, and found it had jurisdiction to consider Ms. Rotolante’s claim because Mr. Grant “is required to submit to arbitration pursuant to the [FINRA Customer] Code and, having answered the claim, is bound by the determination of the Panel on all issues submitted.” The panel subsequently entered an award for Ms. Rotolante and against Mr. Grant on several of her claims, awarding $49,000 in compensatory damages, together with interest, attorney’s fees and part of the filing fee.
Ms. Rotolante subsequently petitioned the trial court to confirm the FINRA arbitration award and enter judgment. In response, Mr. Grant sought to remove the case to the federal district court pursuant to 28 U.S.C. § 1441. The district court sent the case back to the state court for lack of subject matter jurisdiction. See Grant v. Rotolante, No. 6:13-cv-168-Orl-TBS, slip op. at 9-17, 2018 WL 2155076 (M.D.Fla. May 17, 2013). Back in state court, Mr. Grant challenged the arbitration award, arguing that Ms. Rotolante’s claims against him were not arbitrable. The court disagreed and confirmed the FINRA arbitration award. On appeal, Mr. Grant asserts that he was not required to arbitrate Ms. Rotolante’s claim. He argues that the panel did not have jurisdiction to conclusively decide the arbitrability of this matter and that Ms. Rotolante was not his “customer,” a prerequisite for invoking arbitration under the FINRA Rules.
1. Arbitrability
The arbitrability of the merits and the question of who decides arbitrability depend on the agreement of the parties. See First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). “But, unlike the arbitrability of claims in general, whether the court or the arbitrator decides arbitra-bility is an issue for judicial determination *131 unless the parties clearly and unmistakably provide otherwise.” Oracle Am., Inc. v. Myriad Grp. A.G., 724 F.3d 1069, 1072 (9th Cir.2013) (internal quotation marks and citations omitted). Thus, “there is a presumption that courts will decide which issues are arbitrable.” Id. The mere fact that Mr. Grant is a FINRA member does not provide “clear and unmistakable” evidence that he consented to FINRA determination on the issue of arbitrability. As there was no evidence that Mr. Grant intended the panel would determine the issue of arbitrability, the presumption that the court will decide which issues are arbi-trable remains unrebutted. See Goldman, Sachs & Co. v. City of Reno, 747 F.3d 733, 738-39 (9th Cir.2014). Accordingly, the court must determine whether this particular dispute is arbitrable. As the resolution of arbitrability turns only on questions of law, our review is de novo. See, e.g., First Options, 514 U.S. at 947-48, 115 S.Ct. 1920; Coady v. Ashcraft & Gerel, 223 F.3d 1, 10 (1st Cir.2000); SCG Harbourwood, LLC v. Hanyan, 93 So.3d 1197, 1199 (Fla. 2d DCA 2012); Fla. Envtl. Servs., Inc. v. Rentoumis, 950 So.2d 466, 470 (Fla. 4th DCA 2007).
In determining whether Ms. Roto-lante’s claim is arbitrable, the Federal Arbitration Act (“FAA”), not the Florida Arbitration Code (“FAC”), applies. The FAA, 9 U.S.C. §§ 1 to 16, creates a body of federal substantive law that is applicable in both state and federal courts. See Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). It provides concurrent jurisdiction to state courts to enforce arbitration agreements with a federal forum available only when diversity or federal question jurisdiction is otherwise established. See 9 U.S.C. § 4; Vaden v. Discover Bank, 556 U.S. 49, 59, 129 S.Ct. 1262, 173 L.Ed.2d 206 (2009) (reiterating that FAA does not bestow federal jurisdiction but requires independent jurisdictional basis for access to federal forum). However, under the Supremacy Clause of the United States Constitution, the FAA supersedes inconsistent provisions of state law and state courts must enforce the FAA when it applies. See, e.g., id.; Della Pennav. Zabawa, 931 So.2d 155, 160 n. 3 (Fla. 5th DCA 2006).
“The FAA applies to any contract ‘affecting’ interstate commerce.” Klay v. All Defendants, 389 F.3d 1191, 1200 n. 9 (11th Cir.2004) (quoting Dobson, 513 U.S. at 273-74, 115 S.Ct. 834). Here, this matter involves securities, which plainly implicates interstate commerce, and thus, the FAA, not the FAC, applies. See Qubty v. Nagda, 817 So.2d 952, 956 (Fla. 5th DCA 2002) (“Brokerage contracts concerning the sale of securities have been consistently treated as contracts involving interstate commerce.”). Even if the FAC applied, in cases involving interstate commerce, the FAC would apply only to the extent that it' is not in conflict with the FAA. See, e.g., Shotts v. OP Winter Haven, Inc., 86 So.3d 456, 463-64 (Fla.2011); Qubty, 817 So.2d at 955-56.
Under the FAA, in determining the threshold issue of arbitrability, courts consider whether the party opposing confirmation objected throughout the arbitration proceeding. See, e.g., Czarina, L.L.C. v. W.F. Poe Syndicate, 358 F.3d 1286, 1294 (11th Cir.2004); Avis Rent A Car Sys. v. Garage Emps. Union, 791 F.2d 22, 26 (2d Cir.1986). In Kaplan v. First Options of Chicago, Inc., 19 F.3d 1503, 1510 (3d Cir. 1994), the Third Circuit held that “where a party objects to arbitrability but nevertheless voluntarily participates in the arbitration proceedings, waiver of the challenge to arbitral jurisdiction will not be inferred.” In that case, after the arbitrator rejected the plaintiffs’ objection to arbitration, they participated in the .arbitration on
*132 the merits and lost. In affirming, the United States Supreme Court concluded that since the plaintiffs had “forcefully objected] to the arbitrators deciding their dispute,” they had not clearly agreed to submit the issue of arbitrability to arbitration. First Options, 514 U.S. at 946, 115 S.Ct. 1920; see also China Minmetals Materials Imp. & Exp. Co. v. Chi Mei Corp., 334 F.3d 274, 291-92 (3d Cir.2003) (holding that although party participated in arbitration, even presenting argument on merits, it had not waived its objection to arbitrator’s jurisdiction because it consistently objected to arbitrator’s jurisdiction throughout proceedings”); Eleanor L. Grossman, Annotation, Participation in Arbitration Proceedings as Waiver of Objections to Arbitrability Under State Law, 56 A.L.R.5th 757 (1998) (collecting cases in which courts have discussed whether, or under what circumstances, party’s participation in arbitration proceeding may result in waiver of that party’s right subsequently to raise arbitrability issue).
In the instant case, Ms. Rotolante contends that Mr. Grant waived his objections to arbitration. However, at the outset of the arbitration hearing, and throughout the four-day arbitration hearing, Mr. Grant objected to the panel’s jurisdiction. Therefore, while Mr. Grant had other options to challenge the panel’s authority, he did not waive his objection to the panel’s jurisdiction under the FAA. See, e.g., Local 36 Sheet Metal Workers’ Int’l Ass’n v. Whitney, 670 F.3d 865, 868 (8th Cir.2012) (describing four methods party may employ to challenge arbitrator’s authority: (i) object to arbitrator’s authority but proceed to merits before arbitrator, while expressly reserving jurisdictional question for courts; (ii) seek preemptive declaratory or injunctive relief in court before arbitration commences; (iii) notify arbitrator of refusal to arbitrate, thereby forcing other party to file motion in court to compel arbitration; or (iv) timely file motion to vacate arbitrator’s award following arbitration); see also Shank/Balfour Beatty v. Int’l Bhd. of Elec. Workers Local 99, 497 F.3d 83, 90 n. 2 (1st Cir.2007) (determining that appellant “did not waive its right to challenge arbitrability by participating in the hearing on the merits after it raised the arbitrability issues before the arbitrator and the arbitrator ruled against [the appellant]”).
Because Mr. Grant challenged the arbi-trability of Ms. Rotolante’s claims at the outset of the arbitration proceedings, his motion to vacate was not subject to the three-month statute of limitations under 9 U.S.C. § 12. See Solvay Pharm., Inc. v. Duramed Pharm., Inc., 442 F.3d 471, 478 n. 6 (6th Cir.2006) (noting that challenge to arbitrability may manifest itself as attack on arbitration award under 9 U.S.C. § 10(a) or as motion resisting petition to compel arbitration under 9 U.S.C § 4 when challenge occurs after arbitration, but “[w]hen the challenge occurs prior to the arbitration, there is no question that the issue is one of arbitrability, for no award yet exists to be challenged”); see also Lucey v. FedEx Ground Package Sys., Inc., 305 Fed.Appx. 875 (3d Cir.2009) (holding that contractor’s failure to file motion to vacate arbitrator’s decision did not waive challenge to written arbitration clause as unconscionable where contractor raised objection to arbitration and validity of provision); Lukens Steel Co. v. United Steelworkers of Am. (AFL-CIO), 989 F.2d 668, 679 n. 11 (3rd Cir.1993) (“We note that to preserve an objection to arbitrability, a party need only state his or her objection on the record at the arbitration. The party may then proceed with the arbitration and raise the objection at a later date in an enforcement proceeding.”). We decline to mandate additional require *133 ments to contest arbitrability in the court system.
2. FINRA Rule 12200
Since Mr. Grant did not waive arbitrability, we must next determine whether he was required to arbitrate Ms. Rotolante’s claims. “[Arbitration is a matter of contract,” Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 69, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010), and there is “a liberal federal policy favoring arbitration agreements,” Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). “In line with these principles, courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms.” AT&T Mobility LLC v. Concepcion, — U.S. —, 131 S.Ct. 1740, 1745, 179 L.Ed.2d 742 (2011) (internal citations omitted). However, while arbitration is favored, “no party may be forced to submit a dispute to arbitration that the party did not intend and agree to arbitrate.” Seifert v. U.S. Home Corp., 750 So.2d 633, 636 (Fla.1999); see Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ., 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) (“Arbitration ... is a matter of consent, not coercion.”).
FINRA arbitrations are governed by the FINRA Code of Arbitration Procedure for Customer Disputes (“FINRA Customer Code”).[3] FINRA Rule 12200 of the FINRA Customer Code constitutes an “agreement in writing” under the FAA, 9 U.S.C. § 2, and provides:
Parties must arbitrate a dispute under the Code if:
Arbitration under the Code is either:
(1) Required by a written agreement, or
(2) Requested by the customer
The dispute is between a customer and a member or associated person of a member; and
The dispute arises in connection with the business activities of the member or the associated person ....
Therefore, under the FINRA Customer Code, FINRA members, including Mr. Grant, must arbitrate disputes arising out of their business activities at the request of a “customer.” See, e.g., UBS Fin. Servs., Inc. v. Carilion Clinic, 706 F.3d 319, 325 (4th Cir.2013). Assuming Ms. Rotolante is a customer, she would be entitled to invoke FINRA Rule 12200 as an intended third-party beneficiary in her dispute with Mr. Grant. See, e.g., Goldman, Sachs & Co., 747 F.3d at 739 n. 1; Kidder, Peabody & Co. v. Zinsmeyer Trusts P’ship, 41 F.3d 861, 863-64 (2d Cir.1994); see also Waterford Inv. Servs., Inc. v. Bosco, 682 F.3d 348, 353 (4th Cir.2012); MONY Sec. Corp. v. Bornstein, 390 F.3d 1340, 1342 (11th Cir.2004). We review this question de novo. E.g., Morgan Keegan & Co. v. Silverman, 706 F.3d 562, 565 (4th Cir.2013) (indicating court reviews de novo question of whether investors were customers of distributor-underwriter engaged in dispute arising from distributor-underwriter’s conduct of its business activities, such that investors could invoke mandatory arbitration under FINRA rule).
*134 Mr. Grant denies any obligation to arbitrate under FINRA Rule 12200, arguing that Ms. Rotolante was not a “customer” within the meaning of the FINRA Customer Code. The question of whether Ms. Rotolante was a “customer” is a question of Florida contract law and federal arbitrability law, without the presumption in favor of arbitration. See Concepcion, 131 S.Ct. at 1745 (noting that FAA reflects “fundamental principle that arbitration is a matter of contract” (quoting Jackson, 561 U.S. at 67, 130 S.Ct. 2772)); Goldman, Sachs & Co., 747 F.3d at 742 (“If the parties contest the existence of an arbitration agreement, the presumption in favor of arbitrability does not apply.... The presumption in favor of arbitrability applies only where the scope of the agreement is ambiguous as to the dispute at hand_”). As there is no written agreement between Mr. Grant and Ms. Roto-lante, this question must be resolved to determine the existence of a contract to arbitrate, not the scope of an arbitration agreement. Carilion Clinic, 706 F.3d at 324 n. 2.
The FINRA Customer Code does not provide a comprehensive definition of the term “customer,” stating only that “ ‘[a] customer shall not include a broker or dealer.’”[4] FINRA Rule 12100(i). But as to non-brokers and non-dealers, like Ms. Rotolante, the FINRA Rules do not define the term, leading to varying interpretations.[5] The Fourth Circuit has defined *135 “customer” for purposes of FINRA Rule 12200 as “one, not a broker or a dealer, who purchases commodities or services from a FINRA member in the course of the member’s business activities insofar as those activities are regulated by FINRA— namely investment banking and securities business activities.” Carilion Clinic, 706 F.3d at 325; see Goldman, Sachs & Co., 747 F.3d at 738-39 (adopting Carilion Clinic definition of “customer”). This definition comports with other courts’ decisions addressing the meaning of the term “customer” under FINRA Rule 12200. See, e.g., Citigroup Global Markets, Inc. v. Abbar, No. 13-2172, 2014 WL 3765867, at *6 (2d Cir. Aug. 1, 2014) (holding that FINRA “customer” is one who, while not broker or dealer, either purchases good or service from FINRA member, or has account with FINRA member). The Eighth Circuit construed “customer” to refer to one involved in a business relationship with a FINRA member that is related directly to investment or brokerage services. Berthel Fisher & Co. Fin. Servs., Inc. v. Larmon, 695 F.3d 749, 752 (8th Cir.2012) (citing Fleet Boston Robertson Stephens, Inc. v. Innovex, Inc., 264 F.3d 770, 772 (8th Cir.2001)). The Eighth Circuit also noted that the term “customer” requires that the FINRA member provide investment or brokerage services “to the customer either directly or through its associated persons.” Id. at 753.
Here, Mr. Grant clearly advised Ms. Ro-tolante about her investments, referred her to the bank to obtain the home mortgage in order to invest in securities, and continued to advise her after she opened an investment account with the bank’s investment subsidiary. However, it is equally clear that Ms. Rotolante did not open any account with Mr. Grant, deposit any money or securities with him, purchase or sell any securities from or through him, and never paid Mr. Grant any compensation. Further, Mr. Grant did not receive any financial benefit from the bank or any other source. Therefore, Ms. Rotolante was not Mr. Grant’s customer under FIN-RA Rule 12200. See Wachovia Bank, Nat’l Ass’n v. VCG Special Opportunities Master Fund, Ltd., 661 F.3d 164, 173-74 (2d Cir.2011) (indicating that when it is clear that no goods or services were provided by FINRA member, “there is no need to grapple with the precise boundaries of the FINRA meaning of ‘customer’ ” because “no rational factfinder could infer” customer relationship under such facts); UBS Fin. Servs., Inc. v. W. Va. Univ. Hosps., Inc., 660 F.3d 643, 650 (2d Cir.2011) (indicating that purchase of good or service from FINRA member creates customer relationship); see also Silverman, 706 F.3d at 567-68 (holding that defendants were not “customers” of distributor-underwriter because they did not purchase commodities or services from distributor-underwriter in course of business activities regulated by FINRA); Cf. First Montauk Sec. Corp. v. Four Mile Ranch Dev. Co., 65 F.Supp.2d 1371,1381 (S.D.Fla. 1999) (finding investor was customer of member firm, although account was maintained at different brokerage firm, but representative of member firm managed *136 investor’s account, realizing profits from some trades). Expanding the definition to include Ms. Rotolante under the facts of this ease would upset the reasonable expectations of FINRA members. Herbert J. Sims & Co. v. Roven, 548 F.Supp.2d 759, 764 (N.D.Cal.2008); see Wachovia, 661 F.3d at 171 (stating that word “customer” must “be construed in a manner consistent with the ‘reasonable expectations’ of FINRA members”).
Even if Ms. Rotolante was a customer, her claim would still not be arbitrable because the dispute did not arise out of Mr. Grant’s business activities. While Mr. Grant certainly acted in some capacity as Ms. Rotolante’s financial advisor, it was not in the course of his business activities regulated by FINRA. See, e.g., Eppinger v. Sealy, 25 So.3d 69 (Fla. 5th DCA 2009) (holding that employee’s claims against firm were not subject to mandatory arbitration because they did not arise out of business activities of either employee or firm, but instead, arose out of divorce agreement). The connection between Ms. Rotolante and Mr. Grant is too attenuated to make her a customer of Mr. Grant within the meaning of FINRA Rule 12200. To interpret “customer” so broadly as to include the friendship, as opposed to a non-existent business relationship, between Mr. Grant and Ms. Rotolante disregards the actual relationship between a claimant and a FINRA member and could lead to scenarios where a FINRA member’s membership alone would require arbitration. This would frustrate and do significant injustice to the reasonable expectations of FINRA members. Morgan Keegan & Co. v. Shadburn, 829 F.Supp.2d 1141, 1149-50 (M.D.Ala.2011). Simply, there must be a business connection directly related to the investment- or brokerage-related services provided to a customer.
By agreeing to FINRA Rule 12200, Mr. Grant consented to arbitration with his customers, not with non-customers such as Ms. Rotolante. To compel arbitration when parties have not agreed to do so would discourage entities from agreeing to arbitrate at all out of fear that such agreements would be stretched too far in the course of judicial construction. This, in itself, would undermine the federal policy favoring arbitration. See Raymond James Fin. Servs., Inc. v. Cary, 709 F.3d 382, 388 (4th Cir.2013). In determining that Ms. Rotolante is not a customer of Mr. Grant within the meaning of FINRA Rule 12200, we express no view on the merits of the allegations that Ms. Rotolante details in her amended FINRA Statement of Claim. We hold only that Mr. Grant never agreed or consented to arbitrate disputes with Ms. Rotolante in this case. Therefore, we reverse the final judgment confirming the arbitration award.
REVERSED AND REMANDED for proceedings not inconsistent with this opinion.
SAWAYA and COHEN, JJ., concur.

. The facts set out in this opinion are taken from a partial transcript of the FINRA proceedings. Ms. Rotolante asserts that this Court should not consider the partial transcript because it is not a complete transcript of the four-day arbitration proceeding and was not certified by a court reporter. However, the appellate rules do not require the filing of the entire transcript; rather, the appellant need only file portions of the transcript "deemed necessary.” Fla. R. App. P. 9.200(b)(1). Further, the last page of each volume contains the transcriber's certification. Moreover, Ms. Rotolante has not cited any evidence that the transcript excerpts are not a reliable and accurate transcription of the digitally recorded FINRA proceedings.

. FINRA is a private self-regulatory organization registered under the Securities Exchange Act of 1934. See 15 U.S.C. § 78 o-3. It is authorized to exercise comprehensive oversight over "all securities firms that do business with the public.” Sec. & Exch. Comm'n Release No. 34-56145, 72 Fed. Reg. 42169, 42170 (Aug. 1, 2007). Upon joining FINRA, a member agrees to comply with FINRA’s rules. See FINRA Bylaws of the Corporation art. IV § 1(a), available at http: //finra.com-plinet.com/en/display/display-main.html?rbid=2403& element_id=4609 (last visited Aug. 5, 2014).

. The FINRA Rules include distinct subparts: the "Industry Code,” governing "arbitrations between or among industry parties only,” and the "Customer Code,” applicable in this case, governing arbitrations between "investors and brokers and/or brokerage firms.” See FINRA, Arbitration & Mediation, Code of Arbitration Procedure, available at http://www. finra.org/arbitrationandmediation/arbitration/ rules/codeofarbitrati onprocedure/ (last visited Aug. 5, 2014).

. Prior to 2007, FINRA was known by its prior name, the National Association of Securities Dealers, Inc. ("NASD”). Notably, the Approval Order for the amendments made to the FINRA rules, effective after April 16, 2007, notes that "commenters suggested defining the term 'customer' to help clarify jurisdictional and standing issues related to arbitration.” Order Approving Proposed Rule Change & Amendments to NASD Arbitration Rules for Customer Disputes, 72 Fed. Reg. 4574, 4577 (Jan. 31, 2007). However, NASD declined to follow such suggestions, and specifically noted that the FINRA Rules "would define a 'customer' as not including a broker or a dealer ... the same [definition] as that [previously] found in the general definitions for NASD rules.” Id. FINRA has adopted other rules that, while not contained in the FINRA Customer Code, provides a more specific definition of the term "customer,” e.g., FINRA Rules 2261(c), 4210(a)(3) and 4530, but these definitions are expressly limited in application to these particular FINRA Rules. See FINRA Manual: Rules 2261, 4210 & 4530, available at http://finra.compIinet.com (last visited Aug. 5, 2014); see also FINRA Regulatory Notice No. 12-55, at Q & A 6(a) (Dec. 2012) ("FINRA’s definition of a customer in FINRA Rule 0160 excludes a 'broker or dealer.’ In general, for purposes of the suitability rule, the term customer includes a person who is not a broker or dealer who opens a brokerage account at a broker-dealer or purchases a security for which the broker-dealer receives or will receive, directly or indirectly, compensation even though the security is held at an issuer, the issuer’s affiliate or a custodial agent (e.g., 'direct application’ business, 'investment program' securities, or private placements), or using another similar arrangement.” (internal footnotes omitted), available at http://finra.complinet.com (last visited Aug. 5, 2014)).

. Most courts have held that the term "customer” must have a more limited meaning than simply "all entities other than brokers or dealers.” SunTrust Banks, Inc. v. Turnberry Capital Mgmt. LP, 945 F.Supp.2d 415, 421 (S.D.N.Y.2013); see UBS Sec. LLC v. Voegeli, 684 F.Supp.2d 351, 356 (S.D.N.Y.2010) ("Such an interpretation ... would be absurd.”), affirmed, 405 Fed.Appx. 550 (2d Cir. 2011); see, e.g., Berthel Fisher & Co. Fin. Servs., Inc. v. Larmon, 695 F.3d 749, 752 (8th Cir.2012) (rejecting argument that one may qualify as customer merely by being neither broker nor dealer); Silverman, 706 F.3d at 565-66 (declining to adopt broad scope of term "customer" as anyone not including broker or dealer). Instead, in keeping with sense that "customer” has a broad but not unconstrained sweep, it is frequently defined in a manner that does not upset the reasonable expectations of FINRA members. See, e.g., Wheat, First Sec., Inc. v. Green, 993 F.2d 814, 820 (11th Cir.1993) (rejecting rule re *135 garding customer status that "would do significant injustice to the reasonable expectations” of FINRA members). We reject as overly broad the Eleventh Circuit's holding in Multi-Financial Securities Corp. v. King, 386 F.3d 1364 (11th Cir.2004), which interpreted this definition to broadly include "anyone who is not a broker or a dealer.” See also Cal. Fina Grp., Inc. v. Herrin, 379 F.3d 311, 317 (5th Cir.2004) (noting that "[FINRA Customer] Code defines ‘customer’ broadly, excluding only 'a broker or dealer’ ”); see generally Doe v. Pryor, 344 F.3d 1282, 1286 (11th Cir.2003) ("The only federal court whose decisions bind state courts is the United States Supreme Court.”).