[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-12279
_____

D.C. Docket No. 9:13-cv-81088-KAM


PICTET OVERSEAS INC.,
PHILIPPE BERTHERAT,
REMY ANTOINE BEST,
RENAUD FERNAND DE PLANTA,
JACQUES JOSEPH DE SAUSSURE,
BERTRAND FRANCOIS LAMBERT DEMOLE,
JEAN-FRANCOIS DEMOLE,
MARC PHILIPPE PICTET,
NICOLAS LUCIEN PICTET,

                                                      Plaintiffs - Appellees,

versus

HELVETIA TRUST,
AAA GROUP INTERNATIONAL TRUST,

                                                      Defendants - Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(September 24, 2018)

Before WILLIAM PRYOR, JILL PRYOR and BLACK, Circuit Judges.

JILL PRYOR, Circuit Judge:

This appeal requires us to determine the arbitrability of a dispute under the rules governing members of the Financial Industry Regulatory Authority ("FINRA").  The dispute arose after two investment trusts, Helvetia Trust and AAA Group International Trust (the "Trusts"), hired an independent asset manager to invest their funds.  Through the asset manager, the Trusts opened custodial accounts with Banque Pictet, a Swiss bank.  Unfortunately for the Trusts, the investment manager was less than honest and stole their money.

In an effort to recover their losses, the Trusts initiated before FINRA an arbitration proceeding against the eight individuals who had owned Banque Pictet as partners (the "Partners") and several of Banque Pictet's corporate affiliates.  One of those corporate affiliates was Pictet Overseas, Inc., a Canadian broker-dealer also owned by the eight Partners.  The Trusts asserted that their claims were arbitrable before FINRA under Rule 12200 of the FINRA Code of Arbitration Procedure for Customer Disputes (the "FINRA Arbitration Code"), which requires the arbitration of any dispute brought by a "customer" against a FINRA member or the "associated person" of a FINRA member when the dispute arises in connection with the business activities of the FINRA member or the associated person.  Pictet

2

Overseas was essential to the arbitrability of the Trusts' claims before FINRA because—unlike Banque Pictet and the Partners—Pictet Overseas is a member of FINRA and thus subject to its mandatory arbitration provision.

After the Trusts commenced the arbitration proceeding, Pictet Overseas and the Partners filed an action in federal district court, seeking to enjoin the arbitration. Pictet Overseas and the Partners contended that even if Rule 12200 required Pictet Overseas to arbitrate certain claims before FINRA, it did not require Pictet Overseas or the Partners to arbitrate the Trusts' claims. After a bench trial, the district court agreed, concluding that the Trusts had failed to establish that their claims were arbitrable under Rule 12200, and permanently enjoined the FINRA arbitration. On appeal, the Trusts challenge the district court's ruling that their claims were non-arbitrable. After careful review, and with the benefit of oral argument, we affirm.

## I.    BACKGROUND

A.    **The Trusts' Independent Investment Advisor Steals Millions from Their Banque Pictet Accounts**

This case arises out of a fraud in which more than $1.8 million was stolen from the Trusts' accounts with Banque Pictet.[1] The Trusts' managers selected

---

[1] We set forth the facts based on the findings made by the district court after a bench trial. We accept the district court's factual findings unless they are clearly erroneous. *See Multi-Fin. Sec. Corp. v. King*, 386 F.3d 1364, 1366 (11th Cir. 2004). The Trusts do not assert that the district court's factual findings were clearly erroneous.

3

Brian Callahan, an independent investment advisor, to manage the Trusts' investments.

Through Callahan, the Trusts opened custodial accounts in 2008 and 2010 with Banque Pictet in Geneva.[2]  The agreements the Trusts signed upon opening the accounts provided that the relationship between the Trusts and Banque Pictet was "governed exclusively by Swiss law" and that "[a]ny dispute concerning the relationship . . . shall be subject to the exclusive jurisdiction of the Courts of Geneva."  Doc. 200-2 at 26; Doc. 200-3 at 12.[3]  After the Trusts wired money into their custodial accounts at Banque Pictet, Callahan stole the money.

## B.    The Trusts Initiate a FINRA Arbitration Against Various Pictet Entities and the Partners

In an effort to recover their funds, the Trusts initiated an arbitration before FINRA against the Partners, Pictet Overseas, and several other related entities. The Trusts alleged, among other things, that the Partners aided and abetted Callahan's fraud.  The Trusts sought $1.8 million in actual damages, trebled, and $100 million in punitive damages.

Because the Trusts sued the Partners and several related Pictet entities, we briefly review the relationship among the Pictet entities and the Partners.  The Pictet Group is an international network of banks and investment companies

---

[2] Neither Callahan nor his company had any relationship with Banque Pictet or Pictet Overseas.

[3] Citations in the form "Doc. #" refer to numbered entries on the district court's docket.

owned by the Partners.  Two members of the Pictet Group play significant roles in this case.

The first is Banque Pictet, a private bank headquartered in Geneva, Switzerland, with approximately $250 billion in holdings, 40,000 customers, and 2,500 employees.  Banque Pictet offers its customers custodial services, including holding assets such as cash or securities on behalf of its customers in Switzerland.  Banque Pictet is not a FINRA member and instead is regulated by a Swiss regulatory authority.  When the Trusts initiated the arbitration proceeding, Banque Pictet was organized as a limited partnership under Swiss law.  Each of the Partners was a general partner of Banque Pictet.[4]

The second member of the Pictet Group important to this case is Pictet Overseas, a Canadian broker-dealer with a single office in Montreal, Quebec.  Pictet Overseas differs from Banque Pictet in two significant ways.  First, unlike Banque Pictet, Pictet Overseas is regulated by FINRA and is a FINRA member.  Second, Pictet Overseas is an execution broker, meaning it settles transactions involving equities, bonds, and options for institutional investors.  In contrast to Banque Pictet, Pictet Overseas is not a custodial broker and does not hold funds or securities for its clients.  In fact, under the terms of its FINRA membership agreement, Pictet Overseas is not licensed to maintain custodial accounts.

---

[4] While this litigation was pending, Banque Pictet changed its legal structure to a form akin to a corporation under United States law.

5

## C.    Procedural History

After the Trusts initiated arbitration, Pictet Overseas and the Partners filed this suit seeking an injunction to prevent the Trusts from proceeding with the arbitration, as well as a declaratory judgment that the Trusts' claims were not arbitrable before FINRA.  Shortly after the lawsuit was filed, the district court entered a preliminary injunction enjoining the Trusts from continuing to arbitrate their claims before FINRA, pending further order of the court.

After a bench trial, the district court concluded that the Trusts had failed to establish that their claims were arbitrable under FINRA Rule 12200 and entered written findings of fact and conclusions of law to explain its decision.  Specifically, the district court determined that (1) the Trust were not "customers" of Pictet Overseas or the Partners, (2) the Partners were not "associated persons" of Pictet Overseas, and (3) the Trusts' dispute did not arise "in connection with the business activities" of either Pictet Overseas or the Partners.  The district court then permanently enjoined the Trusts from arbitrating their claims against Pictet Overseas and the Partners in a FINRA forum.  The Trusts now appeal.

## II.    STANDARD OF REVIEW

We review the district court's entry of a permanent injunction for an abuse of discretion, but we review its underlying conclusions of law *de novo*.  *Alabama v. Ctrs. for Medicare & Medicaid Servs.*, 674 F.3d 1241, 1244 n.2 (11th Cir. 2012).

6

We "accept[] the district court's findings of fact that are not clearly erroneous." *King*, 386 F.3d at 1366. In addition, we review *de novo* the district court's interpretation of an agreement to arbitrate. *Id.*

## III.   DISCUSSION

The Trusts challenge the district court's order permanently enjoining them from pursuing their claims in the FINRA arbitration. They contend that the district court erred in awarding injunctive relief because Pictet Overseas and the Partners failed to establish actual success on the merits of their claim that the Trusts' claims were not arbitrable. We agree with the Trusts that Pictet Overseas and the Partners were entitled to injunctive relief only if they established "actual success on the merits" of their claim that the dispute was not arbitrable. *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1268 (11th Cir. 2006) (internal quotation marks omitted). This appeal thus turns on whether Pictet Overseas and the Partners are correct that they were not required to arbitrate the Trusts' claims before FINRA.

Pictet Overseas and the Partners were required to arbitrate the Trusts' claims before FINRA only if they "agreed in advance to submit" this grievance or type of grievance to arbitration. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648-49 (1986). Here, there is no direct, written agreement between Pictet Overseas and the Partners, on the one hand, and the Trusts, on the other hand, to arbitrate disputes before FINRA.

7

Despite the absence of a direct, written agreement, an agreement to arbitrate still may be found based on Pictet Overseas's membership in FINRA.  FINRA is a self-regulatory organization established under the Securities Exchange Act of 1934, 15 U.S.C. § 78o-3, with "the authority to exercise comprehensive oversight over all securities firms that do business with the public."  *UBS Fin. Servs., Inc. v. W. Va. Univ. Hosps., Inc.*, 660 F.3d 643, 648 (2d Cir. 2011) (internal quotation marks omitted).  When Pictet Overseas joined FINRA, it agreed, like all other FINRA members, to comply with FINRA's rules.  *See id.* (citing FINRA Bylaws art. 4 § 1).  These rules include FINRA Rule 12200, which requires a FINRA member and its associated persons to arbitrate certain disputes with customers before FINRA upon the customer's demand.  *See* FINRA Rule 12200 (requiring arbitration when it is "[r]equested by the customer," "[t]he dispute is between a customer and a member or associated person of a member," and "[t]he dispute arises in connection with the business activities of the member or the associated person").  Pictet Overseas's agreement when joining FINRA thus may "itself constitute[] the agreement" to arbitrate.  *MONY Sec. Corp. v. Bornstein*, 390 F.3d 1340, 1342 (11th Cir. 2004).

The parties disagree about whether Rule 12200 creates an agreement to arbitrate the type of claims raised by the Trusts. The Trusts rely on a chain of assertions necessary to support their contention that Rule 12200's requirements are

8

satisfied here:  (1) the Trusts were "customers" of either Pictet Overseas or the Partners, (2) the Partners were "associated persons" of Pictet Overseas, and (3) the dispute "ar[ose] in connection with the [Partners' or Pictet Overseas'] business activities."  The district court rejected each of these assertions in turn.  We need not address the first two, because we agree with the district court that the Trusts' claims did not arise in connection with Pictet Overseas' or the Partners' business activities.  We thus conclude that FINRA Rule 12200 does not require arbitration.

To determine whether Rule 12200 obligates Pictet Overseas and the Partners to arbitrate this dispute, we interpret the FINRA Arbitration Code as we "would a contract under the applicable state law."[5]  *King*, 386 F.3d at 1367.  Because the FINRA Arbitration Code is unambiguous, "the parties' intent must be gleaned from the four corners of the document."  *Crawford v. Barker*, 64 So. 3d 1246, 1255 (Fla. 2011).  "[T]he language" of the Code itself "is the best evidence of the parties' intent, and its plain meaning controls."  *Id.* (internal quotation marks omitted).  And we should determine the parties' intent "from the words of the contract as a whole."  *City of Tampa v. Ezell*, 902 So. 2d 912, 914 (Fla. Dist. Ct. App. 2005).  We must also keep in mind that, "any doubts concerning the scope of

---

[5] We assume for purposes of this appeal that Florida law applies.  By taking the position that Florida law applies, the Trusts have abandoned any argument that another state's law should law apply.  *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) ("[I]ssues not briefed on appeal . . . are deemed abandoned.").

arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Rule 12200 requires a FINRA member or an associated person to arbitrate when the dispute "arises in connection with the business activities of the member or the associated person." FINRA Rule 12200. Because Pictet Overseas is a FINRA member, a dispute that arises in connection with Pictet Overseas's business activities is arbitrable under Rule 12200. But the Trusts do not contend that the dispute has any connection to Pictet Overseas's business activities, so we cannot say that the Trusts' claims are arbitrable because they arose in connection with a member's business activities.

Instead, the Trusts assert that this dispute is arbitrable because it arose in connection with the business activities of the Partners who, the Trusts claim, are associated persons of Pictet Overseas. The parties disagree about what type of connection a dispute must have to an associated person's business activities to satisfy Rule 12200. The Trusts take the position that a dispute arising out of any type of business activity of an associated person is covered by Rule 12200, while Pictet Overseas and the Partners argue that only disputes arising out of business activities of an associated person *as an associated person* are covered.

We agree with Pictet Overseas and the Partners. It is clear when we view Rule 12200 in context that it was intended to bind a FINRA member's associated

10

persons to arbitrate disputes only when the dispute arises in connection with the business activities of the associated person undertaken in his or her capacity as an associated person of the FINRA member.  The relevant context includes the FINRA Arbitration Code's definition of "associated person," which is based solely on the nature of the person's relationship or role with a FINRA member.  *See* FINRA Rule 12100(r) (defining an associated person to include "[a] sole proprietor, partner, officer, director, or branch manager of a member, or other natural person occupying a similar status or performing similar functions, or a natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by a member").[6]  Because a person's status as an associated person depends entirely on his or her relationship or role with the FINRA member, we understand the FINRA Arbitration Code to require an associated person to arbitrate a dispute before FINRA only if the dispute has some connection to the associated person's relationship with the FINRA member.

In addition, common sense dictates that FINRA and its members could not have intended to require FINRA arbitration of any claim that arose out of activities of the associated person that are unrelated to his or her relationship with the FINRA member.  A simple example illustrates this point.  Let's say that a partner

---

[6] Rule 12100(r) sets forth the definition of a "person associated with a member."  This Rule also provides that the term "'associated person' . . . means a person associated with a member, as that term is defined in paragraph (r)."  FINRA Rule 12100(a).

of a FINRA member operates a side business as a real estate agent. The real estate agent qualifies as an "associated person" under the FINRA Arbitration Code because she is a partner of a member. *See* FINRA Rule 12100(a), (r). If the real estate agent is involved in an automobile accident while driving a real estate client to see a home, under the Trusts' interpretation an injured party could bring a tort claim in a FINRA arbitration against the real estate agent because the dispute arose in connection with her business activities—that is, driving her clients to go visit a home. But the relevant business activity—acting as a real estate agent—has nothing to do with the real estate agent's status as a partner of a FINRA member. By contrast, a customer's claim that an associated person, an officer for example, failed to properly supervise the business activities of the FINRA member potentially would be arbitrable under Rule 12200 because this claim would arise out of business activities of the associated person in his or her capacity as an associated person of the FINRA member.

The Trusts contend that the plain language of Rule 12200 provides that a dispute with an associated person is arbitrable if it arises in connection with any business activities of the associated person. But we see nothing in the text of FINRA's Arbitration Code to indicate that Rule 12200 was intended to require arbitration before FINRA—an organization that was established to regulate stock brokerage firms—of disputes that are entirely unrelated to the business activities of

12

a FINRA member or the associated person's activities undertaken in his or her capacity as an associated person.[7]  We acknowledge that we must resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration."  *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.  This rule is inapplicable here, however, because we have no doubts regarding the scope of issues arbitrable under Rule 12200.  *See Kemiron Atl., Inc. v. Aguakem Int'l, Inc.*, 290 F.3d 1287, 1290 (11th Cir. 2002) (explaining that "the intent of the contracting parties is paramount and can trump the FAA's policy in favor of arbitration").

Assuming for purposes of this appeal that the Partners qualified as associated persons of Pictet Overseas, we conclude that the dispute here is non-arbitrable because it did not arise in connection with the Partners' business activities as associated persons of Pictet Overseas.  The district court's factual findings establish that the Trusts' claims relate to their custodial accounts that were opened with and maintained by Banque Pictet in Switzerland.  At best, the Trusts' claims arise out of the Partners' business activities undertaken as general partners of Banque Pictet.  But Banque Pictet is not a FINRA member.  Because the Trusts' claims have no connection to the business activities of Pictet Overseas or of the

---

[7] Like the district court, we are persuaded by the reasoning in *Valentine Capital Asset Management, Inc. v. Agahi*, 94 Cal. Rptr. 3d 526, 533-34 (Cal. Ct. App. 2009).  We note that a Florida appellate court has determined that *Valentine* is consistent with Florida law.  *See Eppinger v. Sealy*, 25 So. 3d 69, 72-73 (Fla. Dist. Ct. App. 2009).

Partners undertaken in their capacity as associated persons of Pictet Overseas, we agree with the district court that this dispute is not arbitrable under Rule 12200.

## IV.    CONCLUSION

For the foregoing reasons, we affirm the district court's order permanently enjoining the Trusts from arbitrating in a FINRA forum their claims against Pictet Overseas and the Partners.[8]

**AFFIRMED.**

---

[8] The Trusts also assert that the district court abused its discretion in ruling on several discovery issues.  We affirm the district court on these issues, which warrant no further discussion.

14

WILLIAM PRYOR, Circuit Judge, concurring:

"I am not a strict constructionist, and no one ought to be . . . ." Antonin Scalia, *A Matter of Interpretation: Federal Courts and the Law* 23 (Amy Gutmann ed., 1997). I join the majority opinion in full, but I write separately to explain the fundamental error of the Trusts' so-called "plain" and "unambiguous" construction of FINRA Rule 12200. Oral Argument at 16:10–15.

At oral argument, the Trusts pleaded that "you've got to look at the words," *id.* at 5:12–14, and I could not agree more. One of the fundamental principles of statutory interpretation is the supremacy of the text: "The words of a governing text are of paramount concern, and what they convey, *in their context*, is what the text means." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 2, at 56 (2012) (emphasis altered). But strict construction—"[a]n interpretation according to the literal meaning of the words, as contrasted with what the words denote in context according to a fair reading"—disregards this fundamental principle. *Id.* app. B, at 427.

What the Trusts misunderstand is that we must look at all of the words *in their context*. "Context is a primary determinant of meaning." *Id.* § 24, at 167. We look at the context because "[t]he text must be construed as a whole." *Id.* (emphasis omitted). "Perhaps no interpretive fault is more common than the failure to follow the whole-text canon, which calls on the judicial interpreter to consider

15

the entire text, in view of its structure and of the physical and logical relation of its many parts." *Id.* Strict construction sequesters the words of a text from their context. That is "one of the reasons why 'strict construction' is foolish." *Id.* § 30, at 192.

Suppose a rule required football coaches to arbitrate any "dispute that arises in connection with the activities of an owner of a professional football team." According to a strict constructionist, a football coach would have to arbitrate any dispute that he has with an owner, regardless of the dispute's connection to the business of the football team. For example, if an owner sold a car with a faulty transmission to a football coach, the strict constructionist would require arbitration of the dispute because it arises in connection with an activity of the owner of the team. That interpretation would be foolish because it would ignore the context. A fair reading of the rule, in its context, would lead a reasonable reader to conclude that football coaches must arbitrate disputes that arise in connection with the activities of owners, *as owners of football teams*. The Trusts are correct that we must look at the words of the text, but we must not ignore the context of those words.

Consider Rule 12200 in its context. Rule 12200 compels arbitration when, among other requirements, "[t]he dispute arises in connection with the business activities of the member or the associated person." FINRA Rule 12200. The

16

Trusts' strict construction of this Rule is that an associated person must arbitrate *any* dispute that arises from *any* of his business activities—even when those business activities have nothing to do with his status as an associated person. The panel opinion correctly rejects that "crabbed reading of" the Rule. Scalia & Garner, *Reading Law* § 62, at 355. The correct interpretation of Rule 12200 is that arbitration is required when the dispute arises in connection with the business activities of the associated person, *as an associated person*.

"But you've just added language," reply the Trusts. Oral Argument at 2:49–50. To the contrary, we have ascertained the fair meaning of the text of the Rule in its context. A party becomes an associated person only because of his direct or indirect control of a FINRA member. *See* FINRA Rule 12100(a), (r). Absent this control over a member, that party could never be compelled to arbitrate under Rule 12200 because he would not be an associated person. The Trusts' reading of the phrase "in connection with the business activities of the . . . associated person" isolates that phrase from the context of why that associated person is subject to Rule 12200 arbitration in the first place. Put in context, the fair reading of the Rule is that arbitration is required when a dispute arises "in connection with the business activities . . . of the associated person," but only for the business activities connected to why that "person [is] associated with a member," FINRA Rule 12100(a)—that is, its control over the FINRA member. Arbitration is not required

17

when a dispute arises in connection with the business activities of an associated person that are completely unrelated to any control over a FINRA member.

The fatal flaw in the Trusts' interpretation is that it is "a 'viperine' construction that kills the text" by reading the text "hyperliterally," ignoring its context. Scalia & Garner, *Reading Law* 40. Or as Judge Learned Hand put it, it is "a sterile literalism which loses sight of the forest for the trees." *N.Y. Tr. Co. v. Comm'r of Internal Revenue*, 68 F.2d 19, 20 (2d Cir. 1933) (Hand, J.). "A text should not be construed strictly"; instead, "it should be construed reasonably, to contain all that it fairly means." Scalia, *A Matter of Interpretation* 23.