[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-11049

Non-Argument Calendar

_____

WADE ROBERTS,

Plaintiff-Appellant,

versus

WELLS FARGO CLEARING SERVICES, LLC,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:21-cv-05221-WMR

_____

Before WILLIAM PRYOR, Chief Judge, JORDAN, and BRANCH, Circuit Judges.

PER CURIAM:

Wade Roberts appeals an order compelling him to arbitrate his complaint against his former employer, Wells Fargo Clearing Services, LLC, for collecting the balance he owed on outstanding loans. The district court ruled that Roberts had agreed to arbitrate with Wells Services in his offer of employment letter and in promissory notes he executed to obtain advances on his compensation. We affirm.

In August 2016, Wells Services, a registered broker-dealer, hired Roberts, an experienced financial advisor. Roberts's offer of employment letter required him to "maintain [his] licenses and registration from FINRA [the Financial Industry Regulatory Authority] . . . and other regulatory bodies" as a "broker-dealer agent" and "investment adviser representative" for Wells Services. The letter mentioned that Roberts could execute a "promissory note or [incur] other obligations" with the firm. The letter also contained a dispute resolution clause requiring Roberts to arbitrate all claims concerning his employment in accordance with the rules of the Financial Regulatory Authority:

> 11. **Arbitration; Choice of Law:** You agree that any actions or claims concerning your employment or termination of employment with Wells Fargo

> Advisors shall be resolved by arbitration under the then-current Rules of the Financial Industry Regulatory Authority ("FINRA") regardless of which Party commences the claim. . . . You and Wells Fargo Advisors agree that arbitration shall be the exclusive remedy for all disputes and that the results of such arbitration shall be final and binding. . . . Unless otherwise provided by law, any controversy relating to your duty to arbitrate hereinunder, or to the validity or enforceability of this arbitration clause, or any defense to arbitration, shall also be arbitrated before FINRA.

"By signing and returning a copy of [the] letter, [Roberts] accept[ed] and agree[d] to all terms and conditions of [the] offer."

Roberts registered his new employer with the Financial Authority by executing a Uniform Application for Securities Industry Registration or Transfer, or a "form U-4." As provided in the form, Roberts "agree[d] to arbitrate any dispute, claim or controversy that may arise between [him] and [his] firm, or a customer, or any other person that is required to be arbitrated under the rules, constitutions, or by-laws" of the Financial Authority. Roberts signed a statement that reminded him of his duty to arbitrate "under FINRA rules" and of the binding nature of the arbitration. Roberts also signed a noncompetition agreement with Wells Services in which he acknowledged that his "U-4 requires any dispute between [himself] and the Firm . . . arising out of . . . [his] employment or

termination from employment with the Firm to be submitted to binding arbitration pursuant to the FINRA Code of Arbitration Procedure."

Between August 2016 and July 2021, Roberts obtained five loans from Wells Services for which he executed promissory notes. The loans operated as advances against future bonuses. The dates and amounts of the loans were as follows: August 19, 2016, for $788,128; September 22, 2017, for $274,132; November 16, 2017, for $171,332; November 27, 2018, for $171,332; and November 30, 2019, for $171,332.

Each promissory note stated that Wells Services could declare a default when "employment . . . ends for any reason or for no reason." Upon default, Wells Services could "declare the entire unpaid principal balance of [the] Note immediately due and payable" and offset any amounts owed against "any sums or assets in which [Roberts] h[ad] a direct or indirect interest . . . in any brokerage, deposit, or other account at Wells Fargo Advisors, **including . . . Wells Fargo Bank, N.A. or any other affiliate of Wells Fargo Advisors**." In the notes, Roberts "**authorize[d] Wells Fargo to exercise this right of set-off**."

Each promissory note contained a dispute resolution clause that Roberts and Wells Services would arbitrate controversies connected to the note and his employment under the Rules of the Financial Authority:

> Wells Fargo Advisors and you . . . agree that any ac-
> tions or claims instituted by you or Wells Fargo Ad-
> visors as a result of: (a) any controversy arising out of,
> or in connection with the validity, enforcement or
> construction of, this Note as well as (b) any actions or
> claims concerning your application for employment,
> employment, or separation from employment shall
> be resolved by binding arbitration under the then-cur-
> rent Rules of the Financial Industry Regulatory Au-
> thority. . . . By entering this Agreement, you and
> Wells Fargo Advisors are waiving the right to bring
> any claims/actions noted herein in a court or before
> a jury. . . . This Agreement to arbitrate is subject to
> and shall be governed by the Federal Arbitration Act.

Roberts's promissory notes in August 2016, November 2018, and November 2019 also contained a disclaimer, in bold font, that the "Note contains a binding mutual arbitration provision . . . which may be enforced by the parties."

For each loan, Roberts signed a Loan Payment Authoriza-tion that "authorize[d] and direct[ed] Wells Fargo Services, LLC . . . as [his] employer to deduct the payments due from [his] net incentive pay . . . at each monthly pay period until the Note is re-paid in full." Roberts "voluntarily request[ed] this automatic re-payment service and [agreed] that the fund[s] deducted be used to pay back the loan furnished to [him] by Wells Fargo Advisors."

Roberts also acknowledged that "[t]he amount of such deduction shall be paid to Wells Fargo Advisors in repayment of the Note."

In July 2021, Roberts resigned from Wells Services. Its collections department notified Roberts that he had an outstanding balance of $809,965.26 on his loans, which he refused to pay. Wells Services garnished Roberts's bank accounts to satisfy the debt.

Roberts filed a complaint in a Georgia court against Wells Services for conversion and improper solicitation of money. Roberts denied receiving a loan or "funds . . . other than employee compensation from" Wells Services. Wells Services removed Roberts's action to the district court, *see* 18 U.S.C. § 1332, and then moved to compel arbitration based on Rule 13200 of the Code of Arbitration Procedure for Industry Disputes and to dismiss the complaint.

The district court granted the motion to compel arbitration and dismissed Roberts's complaint without prejudice. The district court ruled that the arbitration clauses in Roberts's employment letter and five promissory notes were enforceable under Georgia law and applied to his claims against Wells Services. The district court rejected Roberts's arguments that the notes were unenforceable.

We review *de novo* an order compelling a party to arbitrate a dispute. *Spirit Airlines, Inc. v. Maizes*, 899 F.3d 1230, 1232 (11th Cir. 2018).

The Federal Arbitration Act embodies "a policy guaranteeing the enforcement of private contractual arrangements" to

arbitrate disputes. *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985). The Act states that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Because the Act "embodies a liberal federal policy favoring arbitration agreements," "[t]he role of the courts is to rigorously enforce agreements to arbitrate" applicable to the parties and their dispute. *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1366 (11th Cir. 2008). Even so, a district court may compel arbitration of "only those disputes . . . that the parties have agreed to submit." *Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287, 302  (2010) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). "[A]s with any other contract, the parties' intentions control." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 664 (2010) (quoting *Mitsubishi Motors*, 473 U.S. at 626).

Roberts's form U-4 and his five promissory notes provide that he would arbitrate controversies related to his employment and the advances on his bonuses in accordance with the rules established by the Financial Authority. That entity is a "self-regulatory organization established under the Securities Exchange Act of 1934, 15 U.S.C. § 78o-3, with the authority to exercise comprehensive oversight over all securities firms that do business with the public." *Pictet Overseas Inc. v. Helvetia Tr.*, 905 F.3d 1183, 1187 (11th Cir. 2018) (internal quotation marks omitted). The Financial

Authority promulgates rules and regulations that govern its members, FINRA Rule 13100(o), and financial advisors registered with the organization, *id.* Rule 13100(r). One of the rules requires that "a dispute must be arbitrated under the Code if the dispute arises out of the business activities of a member or an associated person and is between or among . . . Members and Associated Persons." *Id.* Rule 13200.

Roberts argues that his dispute with Wells Services falls outside the scope of "business activities" in Rule 13200. That rule, read "as a whole," requires that the controversy derive from the business relationship between Roberts and Wells Services. *Cf. Pictet*, 905 F.3d at 1188 (interpreting similarly-worded FINRA Rule 12200); *id.* at 1191 (Pryor, J. concurring) (discussing "the fair meaning of the text of [Rule 12200] in its context"). We determine whether Roberts's claims fall within Rule 13200 based "on the factual allegations in [his] complaint rather than the legal causes of action [he] asserted." *Gregory v. Electro-Mechanical Corp.*, 83 F.3d 382, 384 (11th Cir. 1996).

Roberts alleged that Wells Services seized funds from his accounts under the pretense that the monies satisfied an unpaid balance on loans he received while an employee. Roberts disavowed obtaining a loan from Wells Services and alleged that all funds it gave him constituted "employee compensation." Roberts also alleged that Wells Services lacked authority to demand or to recover funds "after the termination of [his] employment."

This dispute squarely "arises out of the business activities" of Roberts and Wells Services. *See* FINRA Rule 13200. Roberts contests the character of and repossession of monies he received from Wells Services during his employment. Roberts's claims exist solely because of his business relationship with Wells Services and the termination of that relationship.

Roberts argues that he is not required to arbitrate based on *Valentine Capital Asset Management Inc. v. Agahi*, 94 Cal. Rptr. 3d 526 (Cal. Ct. App. 2009), but we disagree. The California court concluded that the defendants, registered representatives of FINRA members who Valentine sued for libel, slander, defamation, unfair competition, and theft of trade secrets, were not obligated to arbitrate under Rule 13200 because neither Valentine nor the defendants' successor employers were members of FINRA. *Id.* at 528–29, 535–36. Although the defendants were associated persons, they did not commit their misdeeds as "associated person[s] of a FINRA member." *Id.* at 535. In contrast, the present dispute about employee compensation stems directly from the business relationship Roberts has as an associated person with Wells Service, a member firm.

Roberts's argument that he can avoid arbitration under Rule 13806 of the Code of Arbitration Procedure fails. Rule 13806 provides for "arbitrations solely involving a member's claim that an associated person failed to pay money owed on a promissory note" and "may not include any additional allegations." FINRA Rule 13806(a). But Roberts, not Wells Services, commenced this suit.

And Roberts contested more than his duty to pay because, by the time he filed his action, Wells Services had already collected the amounts outstanding on the promissory notes. Rule 13806 is inapplicable.

The district court did not err by ordering Roberts to arbitrate his claims against Wells Services under Rule 13200. Roberts signed multiple documents, including a form U-4 and five promissory notes in which he agreed to arbitrate controversies connected to his employment with and the advances he received from Wells Services. *See Kidd v. Equitable Life Assur. Soc. of U.S.*, 32 F.3d 516, 520 (11th Cir. 1994) ("If the NASD did not mandate arbitration of employer-employee disputes, there would be no reason to require Appellees to sign U–4 forms promising to arbitrate such disputes."). Roberts does not dispute the validity of those documents or his agreements to arbitrate. He concedes that he is an associated person and that Wells Services is a member. And the allegations that form the basis of the dispute "arise out of the business activities" between Roberts and Wells Services. *See* FINRA Rule 13200. Roberts is bound by his agreements to arbitrate.

We **AFFIRM** the order compelling Roberts to arbitrate.