2023 IL App (1st) 220956-U

FOURTH DIVISION
Order filed: March 30, 2023

No. 1-22-0956

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| CARL M. BIRKELBACH, | ) | Appeal from the |
| | ) | Circuit Court of |
| Applicant-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2021 CH 822 |
| | ) | |
| THE BRAESIDE FOUNDATION, | ) | Honorable |
| | ) | Caroline Kate Moreland, |
| Respondent-Appellee. | ) | Judge, presiding. |

JUSTICE HOFFMAN delivered the judgment of the court.
Presiding Justice Lampkin and Justice Martin concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm the judgment of the circuit court because the applicant failed to establish grounds for vacation of the arbitration award when he failed to demonstrate that the arbitration panel acted in excess of its powers and when his membership in the Financial Industry Regulatory Authority created an agreement to arbitrate all disputes with customers, even after his expulsion from the industry.

¶ 2    Appellant Carl M. Birkelbach appeals a circuit court order confirming an award issued by

an arbitration panel of the Financial Industry Regulatory Authority ("FINRA") in favor of appellee

The Braeside Foundation ("Braeside") on Braeside's claims against Birkelbach and others concerning investment malfeasance at Birkelbach's investment firm, Birkelbach Investment Securities, Inc. ("BIS"). Birkelbach raises seven challenges to the arbitration award. We find each of those arguments to be without merit. Accordingly, we affirm.

¶ 3    Birkelbach founded BIS in 1978 and served as its Chief Executive Officer and Chief Compliance Officer for the next three decades. In 2011, FINRA's enforcement division filed a nine-count complaint against Birkelbach, BIS, and others alleging, among other things, that Birkelbach had failed to properly supervise one of BIS's account managers who had engaged in unauthorized trading and "churning" of customer accounts and had thereby fraudulently manufactured unauthorized commissions for BIS. See *In the Matter of Department of Enforcement, Complainant, William J. Murphy Midlothian, Illinois, Carl M. Birkelbach Chicago, Illinois, and Birkelbach Investment Securities, Inc. Chicago, Illinois, Respondents*, 2011 WL 5056463, at *17, *29, *30. After a hearing panel found that the allegations against Birkelbach and BIS were well-founded, FINRA's National Adjudicatory Council concluded that Birkelbach was a "serious risk to the investing public" and that his conduct reflected a "shocking disregard for FINRA rules." *Id.* at *37. Accordingly, in October 2011 FINRA barred Birkelbach from the securities industry "in all capacities." *Id.* Following his expulsion from the industry, Birkelbach sold BIS in December 2011.

¶ 4    The present proceeding against Birkelbach began in 2017, when Braeside filed a twelve-count statement of claim seeking FINRA arbitration of its allegations that its account with BIS had been the subject of similar churning and mismanagement. Jack Stone, the brother of Braeside's founder and CEO, Sherwin Stone, worked as a broker at BIS from 2009 to 2012 and managed

Braeside's account during that period. Braeside alleged that it discovered in 2016 that Jack had fraudulently traded in the Braeside account at BIS and at his subsequent employer, Forest Securities, Inc. ("Forest"), to whom he had brought the Braeside account when he left BIS in 2012. Braeside alleged that, by virtue of his supervisory position, Birkelbach was liable for Jack's fraudulent activity while at BIS.

¶ 5     Birkelbach moved to dismiss the statement of claim, asserting that FINRA lacked personal jurisdiction over him because he and Braeside did not have a written agreement to arbitrate and because he allegedly did not have any role in the management of Braeside's account at BIS. The arbitration panel held a hearing on Birkelbach's motion at which it ordered Birkelbach to file a submission agreement consenting to arbitration of Braeside's claims. Birkelbach stated that he was willing to do so on the condition that the panel acknowledged that he was nonetheless maintaining his personal-jurisdiction defense. The panel agreed and issued an order stating that "the filing of the submission agreement will not, in any way, shape or form operate as a waiver of Mr. Birkelbach's jurisdictional challenge to FINRA." The panel then denied Birkelbach's motion to dismiss, and Birkelbach then filed his submission agreement.

¶ 6     The arbitration panel held nineteen evidentiary hearings over the course of 2019 and 2020 before ultimately issuing a ruling in October 2020 in which, in relevant part, it found Birkelbach liable to Braeside for $200,000 in damages. The panel's ruling did not provide any detailed findings of fact, legal analysis, or reasoning for its decision. Instead, it simply provided the procedural history of the case and the panel's ultimate conclusions on liability and damages.

¶ 7     In February 2021, Birkelbach filed an application in circuit court under section 12 of the Illinois Uniform Arbitration Act ("the Arbitration Act") (710 ILCS 5/12 (West 2020)) requesting

that the court vacate the arbitration award. In the application, Birkelbach raised eight claims for relief: (1) that the arbitrators exceeded their powers by exercising personal jurisdiction over him following his disqualification from membership in FINRA and in the absence of a written arbitration agreement, in violation of subsection 12(a)(3) of the Arbitration Act; (2) that the arbitrators exceeded their powers by holding him liable on the basis of his being a "principal" at BIS, in violation of subsection 12(a)(3); (3) that the arbitrators exceeded their powers by attributing $200,000 in damages to him without sufficient evidentiary support, in violation of subsection 12(a)(3); (4) that the arbitrators acted in "manifest disregard of the law" by exercising personal jurisdiction over him despite his having been expelled from the securities industry and no longer being registered with FINRA; (5) that the arbitrators exceeded their powers by "arbitrarily and capriciously" assessing $200,000 in damages against him, in violation of subsection 12(a)(3); (6) that the arbitrators conducted the hearings in a manner that substantially prejudiced his rights when they assessed damages against him without sufficient evidence, in violation of subsection 12(a)(4); (7) that there was no arbitration agreement, precluding a requirement to arbitrate under FINRA Rule 12202; and (8) that gross errors of law and fact concerning the issue of damages appear on the face of the award.

¶ 8     Braeside answered the application and filed a cross-motion seeking confirmation of the award. In March 2022, the circuit court denied Birkelbach's application and granted Braeside's cross-motion in an oral ruling that was later memorialized into a written final order. This appeal follows.

¶ 9     "The standard of review of a circuit court's decision to confirm an arbitration award is *de novo*." *Asset Acceptance, LLC v. Tyler*, 2012 IL App (1st) 093559, ¶ 42. But the Illinois Supreme

Court "has consistently recognized that the judicial review of an arbitral award is extremely limited." *American Federation of State, County & Municipal Employees, AFL-CIO v. Department of Central Management Services*, 173 Ill. 2d 299, 304 (1996) (citing *American Federation of State, County & Municipal Employees v. State of Illinois*, 124 Ill. 2d 246, 254 (1988); *Board of Trustees of Community College District No. 508 v. Cook County College Teachers Union, Local 1600*, 74 Ill. 2d 412, 418 (1979)). Indeed, "[i]t is well established that judicial review of an arbitral award is intended to be more limited than appellate review of a trial court judgment." *Roubik v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 181 Ill. 2d 373, 381 (1998) (citing *Rauh v. Rockford Products Corp.*, 143 Ill. 2d 377, 386 (1991); *Garver v. Ferguson*, 76 Ill. 2d 1, 8 (1979); *Merritt v. Merritt*, 11 Ill. 565, 567–68 (1850)).

¶ 10    The specific limits of this review are evident in section 12 of the Arbitration Act, which sets forth the five grounds on which an Illinois court can vacate an arbitration award. Birkelbach alleges that two of those grounds apply in this case, specifically that "the arbitrators exceeded their powers," as set forth in subsection 12(a)(3), and that "there was no arbitration agreement," as set forth in subsection 12(a)(5). However, due in part to the limitations that section 12 places on our review of an arbitration award, we find that none of Birkelbach's arguments warrant vacation of the award in this case.

¶ 11    In his first issue, Birkelbach raises two arguments under subsection 12(a)(5), which allows for the vacation of an award when there was no agreement to arbitrate. He first cites FINRA rule 12202, titled "Claims Against Inactive Members," which provides under subsection (a) that "[a] claim by or against a member or an associated person who is inactive at the time the claim is filed is ineligible for arbitration under the Code [FINRA Code of Arbitration Procedure for Customer

Disputes] unless the customer agrees in writing to arbitrate after the claim arises." FINRA Rule 12202, available at https://www.finra.org/rules-guidance/rulebooks/finra-rules/12202 (last visited March 22, 2023). Birkelbach argues that he was an inactive member of FINRA by virtue of his 2011 expulsion and, therefore, under rule 12202 needed to agree in writing to submit himself to arbitration, which he maintains he has never done.

¶ 12    However, this argument is refuted by the plain language of rule 12202, which states that a claim against an inactive member is ineligible for arbitration unless "the customer" agrees in writing to arbitrate. The rule plainly does not require that the inactive member also agree to arbitration. The reason for this is apparent when we look at other relevant parts of the FINRA rulebook.

¶ 13    Two rules in particular establish that an officer of a FINRA member, like Birkelbach, agrees to arbitrate disputes with customers solely by virtue of his or her membership in FINRA. First, FINRA rule 12200 provides that:

"Parties *must arbitrate* a dispute under the Code if:

- Arbitration under the Code is either:

    (1) Required by a written agreement, or

    (2) *Requested by the customer*;

- The dispute is between a customer and a member or *associated person of a member*; and

- The dispute arises in connection with the business activities of the member or the associated person, ***." (Emphases added) FINRA Rule 12200, available at

https://www.finra.org/rules-guidance/rulebooks/finra-rules/12200 (last visited March 22, 2023).

Second, FINRA rule 12100 defines the term "associated person of a member," as used in rule 12200, as including both an actively registered member of FINRA, which Birkelbach is not, as well as, in relevant part, "[a] sole proprietor, partner, officer, director, or branch manager of a member, *** whether or not: *** (B) Any such person's registration is revoked, cancelled, or suspended, [or] the person has been expelled or barred from FINRA." FINRA Rule 12100, available at https://www.finra.org/rules-guidance/rulebooks/finra-rules/12100 (last visited March 22, 2023).

¶ 14    Thus, by serving as an officer of BIS, Birkelbach agreed to arbitrate any disputes arising out of his service in that role, even after his expulsion and permanent ban from FINRA. Under these FINRA rules, all that was needed to compel Birkelbach to arbitrate was for a customer to request it, which Braeside did. See *Reading Health System v. Bear Stearns & Co.*, 900 F.3d 87, 90 (3d Cir. 2018) ("Ordinarily, broker-dealers, as members of the Financial Industry Regulatory Authority (FINRA), are required by FINRA Rule 12200 to arbitrate all claims brought against them by a customer.").

¶ 15    Birkelbach's second argument regarding the nonexistence of an agreement to arbitrate is premised not on FINRA rules but on subsection 12(a)(5) of the Arbitration Act itself, which allows for vacation of an arbitration award when "[t]here was no arbitration agreement." He again cites the absence of a written arbitration agreement between himself and Braeside and claims that vacation is required as a simple and direct consequence of that fact. However, federal courts interpreting FINRA rule 12200 have held that the rule itself constitutes a written arbitration

agreement. See *Pictet Overseas Inc. v. Helvetia Trust*, 905 F.3d 1183, 1187 (11th Cir. 2018) ("Despite the absence of a direct, written agreement, an agreement to arbitrate still may be found based on Pictet Overseas's membership in FINRA."); *Reading Health System*, 900 F.3d at 93–94 ("[E]ven in the absence of a written arbitration agreement, Rule 12200 constitutes a binding arbitration agreement between a FINRA member and customer."); *J.P. Morgan Securities Inc. v. Louisiana Citizens Property Insurance Corp.*, 712 F. Supp. 2d 70, 76–77 (S.D.N.Y. 2010) ("While there is no arbitration agreement between either Citizens and JP Morgan or Citizens and Bear Stearns, FINRA rules may establish the requisite arbitration agreements. By becoming members of FINRA, JP Morgan and Bear Stearns have agreed to submit to FINRA rules, including FINRA Rule 12200, which requires members to arbitrate disputes in connection with their business activities if and when arbitration is demanded by a customer. This Rule creates a compulsory arbitration agreement between FINRA and its members, of which customers are intended third party beneficiaries." (internal quotation marks, citations, and footnotes omitted)). Thus, by joining FINRA, Birkelbach agreed to submit to arbitration when requested by a customer. Accordingly, an arbitration agreement existed, and vacation of the arbitration award is not warranted under subsection 12(a)(5) of the Arbitration Act in this case.

¶ 16     Birkelbach's next argument on appeal is that the arbitration panel lacked personal jurisdiction over him for the same reasons discussed above concerning the alleged absence of an agreement to arbitrate. Birkelbach does not specify which section-12 ground for vacation of an arbitration award this argument falls under, but even if we were to find that it is covered by one of the section-12 grounds, based on our above discussion of Birkelbach's agreement to arbitrate

disputes with customers as a condition of his admission to FINRA, we conclude that the FINRA arbitration panel had personal jurisdiction over Birkelbach.

¶ 17    Birkelbach's next argument is that Braeside's claims should have been barred by a one-year statute of limitations and a three-year statute of repose contained in section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j (2012)) and Securities and Exchange Commission Rule 10b-5 (17 C.F.R. § 240.10b-5 (2012)), promulgated thereunder, which, Birkelbach maintains, should have taken precedence over a six-year eligibility provision contained in the FINRA rules. As with his previous argument, Birkelbach does not allege how this argument falls under one of the grounds for vacating an arbitration award contained in section 12 of the Arbitration Act. And indeed, it does not appear to do so. Rather, this appears to be a complaint about an error of law, and it has long been established in Illinois courts that "an arbitrator's award will not be set aside for errors in judgment or mistakes of law or fact." *Rauh*, 143 Ill. 2d at 391. Further, even "[g]ross errors of judgment in law or a gross mistake of fact are not grounds for vacating an award unless the mistakes or errors are apparent upon the face of the award." *Id.* at 393. The arbitration panel's award in this case did not contain any analysis of this issue. Thus, we are unable to see any gross mistake of law apparent on the face of the award, and Birkelbach has failed to show that the award should be vacated on this basis.

¶ 18    Moving to the second section-12 ground at issue in this appeal, Birkelbach alleges that the arbitration panel exceeded its powers in two ways, each warranting vacation of the award under subsection 12(a)(3). First, he contends that the panel exceeded its powers by assessing $200,000 in damages against him without sufficient evidentiary support. However, Birkelbach does not cite any authority for the proposition that an error in determining the amount of damages constitutes

an act in excess of an arbitrator's powers. Indeed, it is the parties' arbitration agreement that sets the limitations of an arbitrator's powers (*American Invsco Realty, Inc. v. Century 21*, 96 Ill. App. 3d 56, 58 (1981)), and Birkelbach has not shown how the arbitration panel acted in excess of the powers granted to it by the FINRA arbitration rules. See *id.* at 59 ("[W]here an award is challenged as invalid, the challenger has the burden of proving his contention by clear, strong and convincing evidence."). Rather, he merely states in a conclusory manner that this determination of damages was an act in excess of the panel's powers. As before, this argument appears to be a complaint about an ordinary error of fact or law, and Birkelbach has, therefore, not shown an entitlement to relief on this issue.

¶ 19    Birkelbach's next argument is simply a tweaked version of his previous one, with Birkelbach now asserting that the arbitration panel exceeded its powers by "arbitrarily and capriciously" setting the damages against him at $200,000. Birkelbach alleges that the panel pulled that number "out of thin air." However, recharacterizing the award as "arbitrary and capricious" does not change the analysis in any way. The burden is still on Birkelbach to show how the panel acted in excess of its powers, and he has not done so with any specificity.

¶ 20    Next, Birkelbach asserts that the arbitration panel erred in finding him liable for the actions of Jack Stone by virtue of his supervisory position. But, yet again, Birkelbach does not allege how this argument falls under one of the grounds for vacation provided in section 12 of the Arbitration Act, and yet again this appears to be a complaint about a common error of law. And with no explanation of the panel's reasoning on the face of the award, Birkelbach cannot show a gross error of law justifying vacation of the award on this issue. Accordingly, this issue likewise has no merit.

¶ 21     Lastly, Birkelbach asserts that Braeside's trustees breached their fiduciary duty to the foundation by not reviewing the records of Braeside's account at BIS and not catching the churning activity earlier, with the implication seemingly being that the trustees' failures absolve Birkelbach of liability. As before, Birkelbach provides absolutely no indication as to how this argument falls under the coverage of section 12, and he has, therefore, failed to show that he is entitled to relief on this basis.

¶ 22     For the foregoing reasons, we conclude that Birkelbach has failed to establish any basis for vacating the FINRA arbitration award under section 12 of the Arbitration Act. Accordingly, we affirm the award.

¶ 23     Affirmed.